UNITED STATES of America, Appellee,

v.

**Randolph Allen LUCAS, Defendant–Appellant.**

**No. 827, Docket 93–1352.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1993.

Decided Feb. 28, 1994.

Mark B. Gombiner, New York, New York (The Legal Aid Society Federal Defender Services Unit, New York, New York, of counsel), for Defendant–Appellant.

Leslie R. Caldwell, Assistant United States Attorney, Brooklyn, New York (Zachary W. Carter, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, Brooklyn, New York, of counsel), for Appellee.

Before: WINTER and PRATT, Circuit Judges, and BURNS, District Judge.*

WINTER, Circuit Judge:

Randolph Allen Lucas appeals from his sentence of twenty-nine years' imprisonment, five years' supervised release, and a $100 special assessment imposed by the district court following his pleas of guilty to RICO conspiracy and narcotics conspiracy charges in violation of 18 U.S.C. § 1962(d) (1988) and 21 U.S.C. § 846 (1988). At sentencing, Judge Korman granted the government's motion for a downward departure from the recommended Guidelines' range and gave Lucas a sentence of one year less than that range. Lucas argues that his sentence must be vacated because Judge Korman erred in limiting the extent of the downward departure on the basis of a hypothetical sentence for the same criminal conduct rendered according to state law. Because the reference to an analogous state law sentence influenced only the extent of the discretionary departure rather than the decision to depart from

---

* The Honorable Ellen Bree Burns, United States District Judge for the District of Connecticut, sitting by designation.

the Guidelines' sentence, Lucas cannot appeal from the district court's exercise of discretion. We therefore dismiss the appeal.

## BACKGROUND

From 1985, Lucas belonged to a drug gang in Queens, New York under the leadership of Lorenzo "Fat Cat" Nichols. Lucas's younger brother Lamont Lucas was also a gang member. Following Nichols' arrest for drug-related activity, Nichols' parole officer, Brian Rooney, charged him with a parole violation. The gang then offered the Lucas brothers the job of wounding Officer Rooney in retaliation for the charge. On October 10, 1985, their gang superiors, Chris "Jughead" Williams and Joseph "Bobo" Rogers, put the brothers in a car with a gun with instructions to cause an accident with Officer Rooney's car and then shoot and pistol-whip Rooney when he emerged to inspect the damage. Concerned about their own safety while assaulting an armed parole officer, however, the Lucases resolved merely to shoot at Officer Rooney in his car as the two sped by him. Randolph Lucas fired two shots, both of which struck Officer Rooney, killing him. Nichols' criminal enterprise rewarded the Lucases with cash payments and control of a drug distribution location.

From February 1991 through January 1992, Lucas belonged to a drug distribution ring led by David "Mousey" Mann that transported heroin, cocaine base, and marijuana from Brooklyn, New York to Wilmington, North Carolina for distribution.

Following his arrest in North Carolina in 1992, Lucas began to cooperate with federal agents and testified before a North Carolina grand jury regarding the Mann crime ring's activities. When the Federal Bureau of Investigation and the United States Attorney's office for the Eastern District of New York learned of Lucas's arrest, they secured his agreement to cooperate in the Nichols' investigation, including testifying before a grand jury. Following his grand jury testimony in New York, however, Lucas refused further cooperation with the federal prosecutors in Brooklyn, leading to his indictment for his activities in the Nichols' RICO conspiracy, including the murder of Officer Rooney. Lucas agreed to plead guilty to this charge, going so far as to sign the plea agreement, only to recant and demand a new lawyer to help him prepare for trial. Lucas's trial was severed from that of his brother and other co-defendants, but before the trials began, all the defendants pleaded guilty. Lucas pleaded guilty to a RICO conspiracy charge and, pursuant to Fed.R.Crim.P. 20, a narcotics charge originating in the Eastern District of North Carolina. These charges produced a Guidelines' range of 360 months' to life imprisonment.

As a condition of his plea agreement, Lucas testified for the government against drug ringleader Mann in his North Carolina trial. Lucas's testimony was less than satisfactory to the government, however. The Assistant United States Attorney questioning Lucas found that he "was evasive and pretended not to understand what I was asking him." After several other witnesses had testified, Mann pleaded guilty to one count of maintaining a continuing criminal enterprise in violation of 21 U.S.C. § 848. Despite Lucas's lack of cooperation at Mann's trial, he had assisted the government in the investigation that had led to fourteen convictions as of April 1993.

Before Lucas's sentencing, the government moved for a downward departure from the recommended Guidelines' range pursuant to U.S.S.G. § 5K1.1, although noting that, "it is not generally the practice of this Office to make downward departure motions for defendants who provide partial assistance, then recant." Although Lucas's recantation and refusal to voluntarily testify against his co-defendants "greatly diminished" the value of his assistance in the government's eyes, the government considered Lucas's limited cooperation useful in providing confidence to proceed in the initial stages of the prosecution and in securing the guilty pleas of his co-defendants. In addition, the government expressed concern over the disparity in sentencing that would result between Lucas and his co-defendants if the court did not depart downward. Lamont Lucas and Williams pleaded guilty to pre-Guidelines RICO offenses and received twenty-five-year sentences to run consecutively to previously im-

posed state sentences. Rogers had previously been sentenced to eight years' imprisonment for his role in the Nichols enterprise and received the statutory maximum term of ten years for the murder conspiracy.

At sentencing, the government argued for a downward departure, but drew the court's attention to the limited extent of Lucas's cooperation. Following the government's summary of its position, the district court stated:

I think the appropriate sentence in this case should be roughly what the mandatory minimum sentence for murder is in New York, which would be an actual time served of 25 years, and if my calculations are correct, to get there I believe the appropriate sentence in this case would be to sentence the defendant to the custody of the Attorney General for a period of 29 years, a period of five years supervised release, and a $50—and a $100 special assessment.... [I]f he had been convicted in New York for murder, he would have received on this case 25 years to life. And I think that 25 years is the appropriate sentence here. What he's getting for his cooperation is the difference of no likelihood necessarily that he would have been released from custody on a crime like this, even after 25 years. But I—he pulled the trigger here. His cooperation, while it was of some consequence, was not the kind of extraordinary cooperation that one would require to really take this case below that figure. And I just wanted you to know the reason that I came to that number. I don't see, taking all of the circumstances into account, why he should do less than the 25 years that would be the sentence that would be imposed in New York State in a case such as this.

The district court then departed downward by one year from the bottom of the Guidelines' range for a sentence of twenty-nine years' imprisonment.

## DISCUSSION

■ A defendant cannot generally appeal the extent of a departure made pursuant to U.S.S.G. § 5K1.1. *United States v. Doe,* 996 F.2d 606, 607 (2d Cir.1993). A defendant's right of appeal under 18 U.S.C. § 3742(a) (1988) is limited to cases where the sentence imposed was "(1) in violation of law; (2) a result of an incorrect application of the sentencing guidelines; (3) for an offense for which there is no sentencing guideline and that is plainly unreasonable; or (4) greater than the sentence specified in the applicable guideline range." *Doe,* 996 F.2d at 607. Thus a defendant may not appeal from a sentence on the ground that the extent of the departure is insufficient. *Id.*

■ Lucas argues that his sentence must be vacated because the district court erred in determining the extent of its downward departure from the Guidelines' recommended range by analogizing to sentences in similar cases under New York law. Lucas thus claims that the district court based its sentence on an "impermissible consideration[ ]," *United States v. Colon,* 884 F.2d 1550, 1553 (2d Cir.), *cert. denied,* 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989), and ignored the proper considerations listed in U.S.S.G. § 5K1.1. According to Lucas, this error produced a sentence imposed in violation of law under 18 U.S.C. § 3742(a)(1). Lucas relies on *United States v. Haynes,* 985 F.2d 65, 69–70 (2d Cir.1993), which held that a sentencing court could not depart downward from the Guidelines' range to achieve parity with a state court sentence. As we noted in *Haynes,* "Allowing departure because a defendant might have been subjected to different penalties had he been prosecuted in state court would make federal sentences dependent on the law of the state in which the sentencing court was located, resulting in federal sentencing that would vary from states to state." *Id.* at 70. Such a result would ignore the warning of 18 U.S.C. § 3553(a)(6) (1988) to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

■ The departure on the basis of a hypothetical state sentence proscribed by *Haynes* is not, however, at issue in this case. Judge Korman departed on the basis of factors outlined in the government's motion pursuant to U.S.S.G. § 5K1.1. This motion contained information directly related to the first three

of the reasons listed as examples of permissible considerations in Section 5K1.1: "(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance...." While it is error to make the decision to depart from the Guidelines' recommended sentencing range on the basis of a hypothetical state sentence, it is within the district court's broad discretion to refer to state sentences for analogous crimes in determining the extent of a departure based on other grounds. State sentences are one of many guides that are relevant to determining the reasonableness of the extent of a departure.

Citing *United States v. Mariano,* 983 F.2d 1150, 1156 (1st Cir.1993), Lucas contends that the district court "must at a bare minimum indicate its cognizance of these [Section 5K1.1] factors.... [and] would also do well to make specific findings regarding each item." Judge Korman's explicit consideration of several of the Section 5K1.1 factors was more than sufficient to show his cognizance of the listed factors even though he did not invoke Section 5K1.1 by name.

## CONCLUSION

For the foregoing reasons, Lucas may not appeal from the exercise of discretion by the district court in determining the reasonableness of the extent of a downward departure, and we dismiss the appeal.