**UNITED STATES of America,**
**Appellee,**

v.

**Jack BARRESI, Defendant–Appellant.**

**Docket No. 02–1039.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 4, 2002.
Decided: Dec. 16, 2002.

ble failure to give notice of the auction in    strict accordance with Puerto Rico law.

Steven M. Statsinger, The Legal Aid Society, New York, N.Y., for Defendant–Appellant.

Peter A. Norling, Assistant United States Attorney for the Eastern District of New York, Brooklyn, N.Y., (Alan Vinegrad, United States Attorney, and Catherine L. Youssef, Assistant United States Attorney, on the brief), for Appellee.

Before: CALABRESI and B.D. PARKER Jr., Circuit Judges, and STEIN, District Judge.

CALABRESI, Circuit Judge.

Frank Barresi pled guilty to implicating falsely a United States citizen of Pakistani descent in the terrorist attacks of September 11, 2001. The district court (Gershon, *J.*) found an upward departure warranted. The court based on its decision both on the nonmonetary harms caused by the offense and its interference with government functions, neither of which is adequately taken

into account in the Sentencing Guidelines. This determination is not challenged on appeal. In gauging the proper extent of departure, however, it appears that the court considered not only the degree of harm caused by the offense, but also Barresi's prior record and his lack of remorse. We hold that the district court erred in taking the latter two factors into account. Accordingly, we remand for resentencing.

## BACKGROUND

On September 12, 2001, Frank Barresi telephoned the Federal Bureau of Investigations (FBI) and suggested that the manager of the Brooklyn store where his girlfriend worked might have been involved in the September 11 terrorist attacks. Barresi said that on September 7, the manager, who he said was Middle Eastern, had thrown something at Barresi's girlfriend and that when Barresi had gone to the store to confront him, the manager had said "I can't wait for you Americans to die."

The FBI telephoned Barresi on September 15, 2001. In that conversation Barresi reported that the manager had said "I can't wait for you Americans to blow up and die" and that the manager was known to hate Americans. On September 21, an FBI agent questioned the manager, a U.S. citizen of Pakistani descent, who said that on September 7, Barresi had come to the store, had (falsely) represented that he was a corrections officer, and had physically threatened the manager. Later that day, the same FBI agent interviewed Barresi at his home. Barresi initially repeated his accusation. But when told that the FBI had in its possession a recording of the September 7 conversation (this was a ruse), Barresi recanted. He admitted that the manager had never made the statements and that he (Barresi) had at-tempted to implicate the manager because of a personal vendetta.

The FBI arrested Barresi on September 25, 2001 and charged him with violating 18 U.S.C. § 1001(a)(2), "knowingly and willfully ... [making] any materially false, fictitious, or fraudulent statement" in a "matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." Barresi pled guilty on November 2 and was sentenced on January 2, 2002.

At sentencing, the district court applied a base level of 6 under U.S.S.G. § 2B1.1 (Nov. 1, 2001), and then deducted 2 levels for acceptance of responsibility pursuant to § 3E1.1(a). The resulting level 4, combined with Barresi's criminal history category III, would have resulted in a 0–6 month incarceration. The district court, however, exercised its discretion to depart upward. It added an additional 8 levels, and sentenced Barresi to 21 months, the top of the resulting Guidelines range. The court stated two reasons for its decision to depart.

First, it found that Barresi's false report had caused "various agents [to work] on this investigation over a period of ten days," which foreseeably diverted the FBI from the "enormous and almost incalculably important task" of investigating the attacks of September 11 and the danger of possible future attacks. The court therefore concluded that upward departure under U.S.S.G. § 5K2.7, "Disruption of Government Function," was warranted.

Second, the court determined that Barresi's offense not only had cost the FBI significant resources, but also had caused substantial nonmonetary harm to the store manager whom Barresi had falsely implicated. In the Presentencing Report's victim impact statement, the manager stated that he had been sick and unable to work for several days after the incident, that

because of what Barresi had said concerning others in the neighborhood, the manager was afraid to go outside his store, and that he and his wife had begun to discuss the possibility of moving back to Pakistan. The court held that this harm to the manager, along with the harm to the FBI, reflected the kind of conduct addressed in application note 15 of U.S.S.G. § 2B1.1. That application note indicates that since a § 2B1.1 sentencing calculation focuses on monetary harms, an upward departure may be warranted where the monetary harm caused, if any, "substantially understates the seriousness of the offense." The court found in particular that in Barresi's case, "[a] primary objective of the offense was an aggravating, nonmonetary objective" and the offense "caused or risked substantial nonmonetary harm." U.S.S.G. § 2B1.1 cmt. n. 15.

The district court specifically limited the grounds for its upward departure to the above provisions of the Guidelines. Thus the court stated that while § 5K2.3 (which suggests departure for extreme psychological injury) might be applicable, it was not in any way relying on that provision. It also said that it did not view Barresi's offense as a hate crime within the purview of § 3A1.1, since Barresi was apparently motivated by personal vendetta rather than by racial animus. The court, however, did emphasize the fact that Barresi "took advantage of the special vulnerability of this victim because of his ethnicity."

Having determined that an upward departure was warranted, the district court next addressed the proper extent or magnitude of the departure. It emphasized first that it was taking into account two separate harms—one to the victim and one to the FBI. In addition, despite having awarded Barresi two points for acceptance of responsibility, the court stated that Barresi lacked remorse and held that this

justified a greater upward departure. Finally, the court considered "the violent nature" of Barresi's prior record and the fact that "he has failed to learn from past punishment that he must obey the law." It is unclear from the transcript whether the court considered Barresi's prior record as a separate factor in determining the extent of upward departure or as evidence of Barresi's lack of remorse. At oral argument the government stated that the district court relied on Barresi's prior record as a separate factor. Nevertheless, we will also examine the relevance of that prior record as evidence of a lack of remorse.

Based on these considerations, the court increased the offense level from 4 to 12 and sentenced Barresi to 21 months in custody. On appeal, Barresi does not object to the decision to depart upward, but challenges the magnitude of that departure.

## DISCUSSION

### I.

We review the district court's decision to depart from the applicable Guidelines range for abuse of discretion. *United States v. Riera*, 298 F.3d 128, 132 (2d Cir.2002). We will affirm such a departure if (1) the district court's stated reasons for the departure, reviewed *de novo*, are of a kind or a degree not adequately considered by the sentencing commission and represent grounds that may appropriately be relied upon to justify the departure; (2) the factual findings underlying the reasons are not clearly erroneous; and (3) the extent of the departure is reasonable, giving due deference to the sentencing court. *United States v. Fei*, 225 F.3d 167, 171 (2d Cir.2000).

Barresi's appeal raises challenges under all three headings. He argues (1) that the

district court relied on inappropriate considerations (Barresi's criminal history and supposed lack of remorse) in determining the magnitude of the upward departure; (2) that the court made clearly erroneous factual findings (with respect to Barresi's lack of remorse) in its decision; and (3) that the extent of departure was not reasonable, even accepting as legitimate the grounds articulated by the district court.

## II.

In deciding whether or not to depart from the range set by the Sentencing Guidelines, a court must make two separate determinations: whether to depart and, if departure is warranted, how much to depart.

With respect to the first question, whether to depart at all, the law is well developed. The Supreme Court has established a framework for such decisions and the circuit courts, including this circuit, have filled in many of the details. *See, e.g., Koon v. United States,* 518 U.S. 81, 92–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Bala,* 236 F.3d 87, 92 (2d Cir.2000) (a court may consider "imperfect entrapment" in its decision to depart downwardly); *United States v. Bonnet–Grullon,* 212 F.3d 692, 705–06 (2d Cir.2000) (a court may not depart downward based on the claim that prosecution policy led to disparate sentences in different districts); *United States v. Contractor,* 926 F.2d 128, 131–32 (2d Cir.1991) (defendant must receive notice of the grounds for an upward departure); *United States v. Kim,* 896 F.2d 678, 684 (2d Cir.1990) (in deciding whether to depart upward, a court may consider acts for which defendant was not convicted that are sufficiently related to the offense).

The law governing the extent of departure is less extensive. We have held that a "district court must make clear on the record how the court determined the magnitude of the departure." *United States v. Campbell,* 967 F.2d 20, 26–27 (2d Cir.1992). We have also held that a district court need not, in a step-by-step fashion, examine and reject every lower possible departure and that "[t]he key question is whether the reasons given by the district court are sufficient to justify the magnitude of the departure." *Id.* at 26 (internal quotation marks and ellipses omitted). And we have noted that, in making this assessment, we "consider only the [district] court's stated reasons for departure, rather than any additional rationales supplied by the government." *United States v. Moe,* 65 F.3d 245, 250 (2d Cir.1995).

Barresi argues that when the district court determined how far to depart, it should not have considered either his prior record or his alleged lack of remorse. This contention directly raises the question of whether, in determining the *extent of departure,* a sentencing court is permitted to consider factors that would not be permissible grounds for the *initial decision to depart.*

The circuits are split on this issue. The Fourth Circuit has unequivocally held that "a sentencing court may not consider in determining the extent of a departure from the guideline range a factor that would not constitute a valid basis for departure." *United States v. Hall,* 977 F.2d 861, 865 (4th Cir.1992). The Tenth Circuit has taken a similar position. *United States v. Goldberg,* 295 F.3d 1133, 1141 (10th Cir.2002) (rejecting the proposition that "a rationale [may be] permissible as a basis for calculating the *extent of* departure, even if it is impermissible for determining *whether to* depart"). The Fifth Circuit, however, has taken a different view, holding that "the decision as to the extent of the departure is committed to the almost complete discretion of the district

court, which may consider factors beyond the narrower set that could independently support the departure in the first instance." *United States v. Alvarez*, 51 F.3d 36, 40–41 (5th Cir.1995).

In *United States v. Lucas*, 17 F.3d 596 (2d Cir.1994), we considered a variant of this question. The issue in *Lucas* was whether a sentencing court, when determining the extent of a downward departure, could consider what the defendant's sentence would have been under state law. And we there held that "[w]hile it is error to make the decision to depart from the Guidelines' recommended sentencing range on the basis of a hypothetical state sentence, it is within the district court's broad discretion to refer to state sentences for analogous crimes in determining the extent of a departure based on other grounds." *Id.* at 600.[1]

*Lucas* has been read by the Fifth Circuit and by some commentators as standing for the general proposition that the extent of a departure may be based on factors that do not support the initial decision to depart. *See Alvarez*, 51 F.3d at 41; Thomas W. Hutchison et al., *Federal Sentencing Law and Practice* § 10.6 n. 76 (2002). We believe, however, that such a reading is not justified. There is a difference between relevant statutes or guidelines that provide a metric for the extent of an already determined departure and factors, like a defendant's prior record, which do not provide a metric, but introduce entirely new normative considerations into the departure calculus. *Lucas* establishes the permissibility of considerations of the first sort—the use of analogous statutes and guidelines as a metric

for how much to depart.[2] It does not establish the permissibility of the second.

## III.

■ In the instant case, the government concedes that the district court, in reaching its decision to impose an 8–point upward departure, relied not only on the effects of the offense, but also on Barresi's prior record and his lack of remorse. There is no doubt that the court would not have been permitted to use Barresi's prior record in its initial decision to depart upward vertically, since the adequacy of a prior criminal record is a proper consideration for horizontal but not vertical departures. As we stated in *United States v. Tropiano*,

> When departing horizontally under U.S.S.G. § 4A1.3 for criminal history, the court must state its reasons both for departing and, with some specificity, for the extent of the departure. The court meets this requirement by proceeding sequentially from the criminal history category determined by the defendant's criminal history point score through each higher criminal history category until it settles upon a category that fits the defendant.

50 F.3d 157, 162 (2d Cir.1995) (citations and internal quotations omitted). *See also United States v. Khalil*, 214 F.3d 111, 124 (2d Cir.2000) ("The district court cannot avoid the step-by-step framework required for a departure pursuant to § 4A1.3 by classifying a departure based on criminal history as an offense level departure involving aggravating circumstances under

---

1. This holding is consistent with the general rule in this circuit that in evaluating the reasonableness of the magnitude of a departure, we "may look to analogous statutes and their guidelines for guidance." *United States v. Guzman*, 282 F.3d 177, 182 (2d Cir.2002).

2. *See also United States v. Bonner*, 313 F.3d 110 (2d Cir.2002) (per curiam) (employing the sentences of codefendants as a metric).

5K2.0.") (internal quotation marks omitted); *United States v. Riera*, 298 F.3d at 132 ("[A] § 5K2.0 departure based on recidivism concerns is allowed only if the court makes findings distinguishing the defendant from the typical recidivist.") (internal quotation marks omitted).

▇ We today hold that the district court was also not permitted to take the defendant's prior record into account in determining the extent of a vertical upward departure. Consideration of the defendant's prior record does not provide a metric for the extent of departure, but only a reason to depart more. Moreover, if we were to allow prior record to be relied upon, we would improperly let a court give additional weight to a factor already included in the Guidelines criminal history computation. A court is permitted to depart from the Guidelines based only on "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. It follows that the court was barred from considering Barresi's record in its sentencing decision.[3]

Whether the Guidelines take a defendant's remorsefulness into account is a more difficult question. If they do take it into account, then by the same logic as above, a defendant's lack of remorse would not be a proper basis for either an initial decision to depart or for assessing the extent of an otherwise warranted departure. We do not, however, need to decide that question in this case.

▇ The only reasons that the district court stated for its finding of no remorse were Barresi's history of recidivism and his previous, unrealized expressions of regret: "He now stands before me and says he's sorry, it will never happen again. I note that the record indicates that he has said the same thing to other judges on prior occasions." The inference from these facts to a lack of genuine remorse is clearly erroneous. A defendant's prior record is not sufficient evidence of lack of remorse. Nor does the absence of acts bespeaking regret constitute such evidence, at least in a case like this, in which the defendant, having been incarcerated since the time of arrest, has had little opportunity to perform such good deeds.

Deference must, of course, be given to the district court's particular ability to observe defendants and their mannerisms in testifying. But the record before us does not indicate that Barresi was deemed unremorseful on this basis. In the absence of any grounds in the record that could persuasively warrant the finding, we must conclude that the district court erred in considering lack of remorse in deciding the extent of departure.[4]

## IV.

▇ Barresi urges us to rule on whether the magnitude of the departure was reasonable, given the remaining, permissible considerations before the court, namely, the effects of Barresi's offense, both on the FBI and on his victim. We decline to do so. Having found that the district court relied on some improper grounds in

---

**3.** Because this fact is sufficient to decide the present case, we need not consider whether factors prohibited for other reasons may be taken into account in determining the magnitude of departure, upward or downward, once a permissible ground for departure is present.

**4.** We note that the district court, having departed downward for acceptance of responsibility, could not reasonably have based its upward departure for lack of remorse on the absence of such acceptance, even if such a ground were permissible.

determining the extent of departure, the appropriate course is to remand for resentencing. *Cf. Williams v. United States*, 503 U.S. 193, 201–02, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992); *United States v. Mandel*, 991 F.2d 55, 59 (2d Cir.1993). We do not doubt that on remand the district court will reassess the magnitude of departure, taking into account only the extent of the harm to the FBI and Barresi's victim, and will reach a decision to which great deference is due.

## CONCLUSION

The case is remanded for reconsideration of the extent of the upward departure.