**UNITED STATES of America, Appellee,**

v.

**Jack BARRESI, Defendant–Appellant.**

**Docket No. 03–1368.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 27, 2004.

Decided: March 9, 2004.

Alyssa A. Qualls, Assistant United States Attorney, Brooklyn, New York (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Emily Berger, Assistant United States Attorney, Brooklyn, New York, on the brief), for Appellee.

Emily R. Daniel, New York, New York for Defendant–Appellant.

Before: KEARSE, CALABRESI, and KATZMANN, Circuit Judges.

KEARSE, Circuit Judge:

This case returns to us after resentencing proceedings following the decision of this Court in *United States v. Barresi,* 316 F.3d 69 (2d Cir.2002) (*"Barresi I "*), which remanded for resentencing upon a reassessment by the district court of the magnitude of the upward departure from the Sentencing Guidelines ("Guidelines") to be imposed on defendant Jack Barresi, without consideration of factors that this Court in *Barresi I* found to be impermissible. Barresi, who had pleaded guilty to making false statements to the Federal Bureau of Investigation ("FBI"), in violation of 18 U.S.C. § 1001(a)(2), and was originally sentenced principally to a 21–month term of imprisonment, to be followed by a three-year term of supervised release, appeals from a May 29, 2003 judgment of the United States District Court for the Eastern District of New York, Nina Gershon, *Judge,* resentencing him to the same punishment imposed earlier. The district court, noting that Barresi had completed his 21–month prison term, sentenced him to "time served" and three years of supervised release, together with the normal

$100 special assessment. On appeal, Barresi contends principally (1) that the district court failed to reassess the appropriate magnitude of the upward departure it had imposed, (2) that the extent of the departure, with consideration only of the permissible factors, was unreasonable, and (3) that the court erred in concluding that *Barresi I* did not permit it to reduce his supervised-release term to compensate for the fact that the court could no longer reduce his term of imprisonment. Finding merit in the third contention, and noting that the district court erred as a matter of law in believing that any reduction in Barresi's supervised-release term could be accomplished only by means of a Guidelines departure, we remand to the district court for consideration of whether such a reduction, to an extent permissible without a departure, is warranted.

## I. BACKGROUND

The events leading to the present litigation are described in *Barresi I,* 316 F.3d at 71–72, familiarity with which is assumed. Briefly, beginning on September 12, 2001, Barresi spoke with FBI agents and falsely accused a coworker of his fiancée of having made statements revealing that the coworker was somehow involved in, or had prior knowledge of, the September 11, 2001 attacks on the World Trade Center. After Barresi recanted his accusation, he was arrested on September 25, 2001, and charged with "knowingly and willfully · . . . mak[ing] a[ ] materially false, fictitious, or fraudulent statement" in a "matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," in violation of 18 U.S.C. § 1001(a)(2). Barresi pleaded guilty on November 2, 2001.

Under the Guidelines, after a two-step downward adjustment for acceptance of responsibility, Barresi's offense level was

4. As his criminal history category was III, the Guidelines-prescribed range of imprisonment for his offense was 0–6 months. The district court, however, concluded that an upward departure was warranted for two reasons. First, Barresi's false accusation had caused FBI agents to spend more than 10 days investigating his charges, thereby diverting their efforts from the pursuit of bona fide information on the attacks of September 11 and the danger of possible future attacks, and warranted a departure pursuant to Guidelines § 5K2.7 ("Disruption of Governmental Function"). Second, Barresi's false accusation had caused his victim substantial nonmonetary harm, warranting a departure pursuant to Guidelines § 2B1.1 Application Note 15. In determining the extent of the departure, the court considered, in addition, its view that Barresi had failed to show remorse for his crime and that his prior criminal record showed a violent nature and a failure to learn from past punishment. The court decided that the upward departure should be eight steps, making the imprisonment range 15–21 months. The court imposed a prison term of 21 months.

## A. Barresi I

Barresi appealed his sentence, contending (1) that the district court had considered impermissible factors in determining the extent of the departure, (2) that the court made clearly erroneous factual findings with respect to Barresi's lack of remorse, and (3) that the magnitude of the departure was unreasonable. This Court, noting that Barresi challenged only the extent of the departure, not the decision to depart itself, found merit in his first and second contentions. We concluded (1) that there was insufficient evidence to support the court's finding of lack of remorse, and (2) that Barresi's past record was a factor already taken into account by the Guidelines in determining his criminal history category and thus could not properly be taken into account by the court in deciding the extent to which to depart. *See Barresi I*, 316 F.3d at 74–75.

Having concluded that the district court erred in considering those two factors in determining the extent to which to depart, and that a remand was thus necessary, we did not reach Barresi's third contention:

> Barresi urges us to rule on whether the magnitude of the departure was reasonable, given the remaining, permissible considerations before the court, namely, the effects of Barresi's offense, both on the FBI and on his victim. We decline to do so. Having found that the district court relied on some improper grounds in determining the extent of departure, the appropriate course is to remand for resentencing.... We do not doubt that on remand the district court will reassess the magnitude of departure, taking into account only the extent of the harm to the FBI and Barresi's victim, and will reach a decision to which great deference is due.

*Id.* at 75–76.

Our opinion in *Barresi I* was issued in mid-December 2002. The government requested and was granted time to petition for a rehearing *en banc* but filed no such petition. In March 2003, Barresi moved to have the mandate issue forthwith. The mandate was issued on March 11, 2003.

## B. *The Resentencing*

The resentencing on remand took place on May 29, 2003. In the meantime, Barresi completed his 21–month sentence and was released from prison in early April. Prior to the hearing on resentencing, each side urged the district court to take a different tack. The government contended that the decision in *Barresi I* did not allow the district court to modify any part of Barresi's sentence other than his term of

imprisonment. It argued that, since Barresi had completed his term of imprisonment, his challenge to his sentence presented no live case or controversy, and the matter was moot.

Barresi contended that *Barresi I* did not limit the district court to modifying his prison term and hence that the matter of resentencing was not moot. He further argued that the eight-level departure imposed at his initial sentencing would be excessive if based solely on the remaining, permissible, considerations; and citing *United States v. Carpenter*, 320 F.3d 334 (2d Cir.2003), he urged the court to compensate for the excess time he had served in prison by reducing the length of his supervised-release term.

The district court found that the matter was not moot; but it rejected all of Barresi's contentions, adhered to its original sentence, and refused to reduce the length of Barresi's supervised-release term. The court stated as follows:

Let me begin by saying that I don't agree with the government that addressing sentencing at this time is moot and, therefore, we'll go forward with this sentencing procedure eliminating the two factors which the Court of Appeals found improper when I determined the extent of the upward departure, namely the defendant's prior criminal record and lack of remorse, and taking into account only the extent of the harm to the F.B.I. and to Mr. Barres[i]'s victim, as was described in detail at the prior sentencing hearing and which is set forth on the transcript, and I won't repeat.

I again depart eight levels on all of the legal grounds for departure, which were listed on the original Judgment and [*sic*] Conviction, [that] remain applicable.

At the initial sentencing I sentenced him to the top of the guidelines, offense level 12, criminal history three, which was 21 months.

At this point I think the only sensible thing to do is to sentence him to time served. All of the other terms that are set forth in the Judgment and [*sic*] Conviction, which I entered initially will be continued in an amended [Judgment of Conviction], which I will issue.

(Hearing Transcript, May 29, 2003 ("2003 Tr."), at 8.) With respect to Barresi's request for a reduction of his supervised-release term, the court stated as follows:

... I agree with the government that the mandate from the Second Circuit does not permit me to alter other terms of the sentence. The Second Circuit was quite explicit about the limited nature of the mandate. But even assuming that I am incorrect about that and that I am empowered, as the defense argues, relying on the *Carpenter* case, to reduce the period of supervised release, I decline to downwardly depart to reduce the period of supervised release, and under *Carpenter* it would of course require a downward departure in order to effectuate that. So I just reiterate everything in the [Judgment of Conviction]. It will be same except that the range of imprisonment will read "time served."

(2003 Tr. at 9.) In response to a request by Barresi for clarification as to whether the court had determined that the 15–month upward departure was justified solely on the basis of the two permissible grounds or whether it had simply sentenced Barresi to time served on the ground that it lacked authority to reduce his term of supervised release, the court stated as follows:

Of course I'm not including the impermissible grounds, but I don't see any reason for me to attempt to analyze precisely what sentence would have been imposed had I not included them

where the defendant has already served his time. So it seems to me the appropriate thing to do is simply sentence him to time served.

(2003 Tr. at 10.) Judgment was entered accordingly.

## II. DISCUSSION

On appeal, Barresi contends principally (1) that the extent of the upward departure, if based solely on the two permissible factors that led the court to conclude that there should be some departure, was excessive, and (2) that the court erred (a) in construing this Court's mandate in *Barresi I* as not allowing modification of his term of supervised release, and (b) in failing to reduce his supervised-release term to compensate for time erroneously spent in prison as a result of the excessive departure. For the reasons that follow, we conclude that the *Barresi I* mandate did not foreclose either a departure of the same magnitude or, if a lesser departure was found warranted, a modification of Barresi's supervised-release term. We also conclude that the district court erred in stating that a reduction of Barresi's supervised-release term could be achieved only through a Guidelines departure, and that the matter should be remanded to permit the court to consider whether such a reduction is warranted without a departure.

Preliminarily, we note that on April 30, 2003, subsequent to Barresi's original sentencing and our decision in *Barresi I* but prior to Barresi's resentencing, the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, 117 Stat. 650 (2003), became effective. With respect to the present appeal, which involves only (a) questions of law as to the authority of the district court to modify Barresi's term of supervised release and (b) the question of whether the magnitude of the prison-term departure imposed was unreasonable, the PROTECT Act does not alter the prior standards of review. Pure questions of law have been subject to review *de novo*. Prior to the PROTECT Act, the standard for review of a district court's decision to depart was "whether the sentencing court abused its discretion," *Koon v. United States,* 518 U.S. 81, 91, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); but "[l]ittle turn[ed]" on the "abuse of discretion" label, for when the issue was a question of law, no deference was due the district court, *id.* at 100, 116 S.Ct. 2035; "[a] district court by definition abuses its discretion when it makes an error of law," *id.* The PROTECT Act does not alter the principle that pure questions of law are to be reviewed *de novo*. *See generally United States v. Korman,* 343 F.3d 628, 630 (2d Cir.2003) ("Because the question presented on appeal is a question of law that we would review *de novo* in any event, we need not determine whether the PROTECT Act should apply to this case.").

As to the extent of a departure, the question prior to the PROTECT Act was whether the magnitude "[wa]s unreasonable," 18 U.S.C. § 3742(e)(3) (2000), and the statute provided that "[t]he court of appeals ... shall give due deference to the district court's application of the guidelines to the facts," *id.* § 3742(e) (2000). The PROTECT Act similarly directs the courts of appeals to determine whether a "sentence departs to an unreasonable degree," PROTECT Act § 401(d)(1), 117 Stat. 670, 18 U.S.C.A. § 3742(e)(3)(C) (West Pamph. No. 1, July 2003), and with respect to that question continues to provide that "the court of appeals ... shall give due deference to the district court's application of the guidelines to the fact." PROTECT Act § 401(d)(2), 117 Stat. 670, 18 U.S.C.A. § 3742(e) (West Pamph. No. 1, July 2003).

Accordingly, we review the district court's authority to modify Barresi's term

of supervised release *de novo,* and we review the reasonableness of the extent of the prison-term departure with deference. With these standards in mind, we turn to the merits of the appeal.

## A. *The Scope of the Remand in* Barresi I

 The government contended, and the district court agreed, that *Barresi I*'s remand for reassessment of the magnitude of the departure—which increased only Barresi's prison term—should be interpreted to mean that the court could modify only the prison term. Barresi disagrees and argues in addition that *Barresi I*'s invalidation of two of the four rationales on which the district court had relied, in deciding that the departure should be eight steps, should be interpreted to mean that the departure would necessarily be smaller if the court relied only on the two permissible grounds. We reject both sides' contentions that *Barresi I* so limited the district court on remand.

 The nature of the issues for resolution in the district court on a remand from the court of appeals depends principally on the issues that had been presented in the appeal and the directions given by the court of appeals in ordering further proceedings. A "resentencing usually should be *de novo* when a Court of Appeals reverses one or more *convictions* and remands for resentencing" or otherwise "effectively undoes the entire knot of calculation" underlying the original sentencing. *United States v. Quintieri,* 306 F.3d 1217, 1228 (2d Cir.2002) (internal quotation marks omitted) (emphasis in original), *cert. denied,* 539 U.S. 902, 123 S.Ct. 2246, 156 L.Ed.2d 110 (2003); *see, e.g., United States v. Carpenter,* 320 F.3d 334, 341 (2d Cir.2003). However, "absent explicit language in the mandate to the contrary, resentencing should be limited when the Court of Appeals upholds the underlying convictions but determines that

a *sentence* has been erroneously imposed and remands to correct that error." *United States v. Quintieri,* 306 F.3d at 1228 (emphasis in original); *see, e.g., United States v. Stanley,* 54 F.3d 103, 108 (2d Cir.), *cert. denied,* 516 U.S. 891, 116 S.Ct. 238, 133 L.Ed.2d 166 (1995). If the remand specifies the nature of the correction to be made, the scope of the issues on remand is thereby limited.

In *Barresi I,* this Court found that the district court had considered two improper factors in determining the magnitude of the departure. We did not vacate the conviction or the original sentence, however, but simply remanded for "reassess[ment]" or "reconsideration" of the magnitude of the departure without reliance on the improper factors, 316 F.3d at 76, and "for resentencing," *id.* at 71. In so doing, we expressly declined to rule on the question—explicitly presented by Barresi—of whether a departure to the same extent could be found reasonable if based solely on the two permissible factors that had led the court to depart. *See id.* at 75. The implication of our decision to remand for reassessment and resentencing without ruling on the reasonableness question was thus that, on the record before us, a departure to the same extent based only on the two permissible factors could be reasonable. Had we been of the contrary view, it would have been judicially inefficient to remand without foreclosing that result—especially given our closing words that the district court's resentencing after the required reassessment would be "a decision to which great deference is due," *id.* at 76. Accordingly, we reject Barresi's contention that *Barresi I* meant that the eight-step departure could not be justified by reliance solely on the two permissible factors, *i.e.,* nonmonetary harm to Barresi's victim and misdirection of law enforcement efforts.

In remanding for resentencing, however, *Barresi I* plainly envisioned that the district court could conclude that a smaller departure was warranted, and our opinion was silent as to the methods by which the district court could adjust Barresi's sentence if it determined that less than an eight-step departure, or a sentence below the top of the range thereby reached, was warranted by reliance solely on the two permissible factors. In the absence of language to the effect that the district court could adjust only Barresi's term of imprisonment, we think the appropriate inference is that any legally permissible adjustment could be made in order to remedy the error. Accordingly, because we conclude, as discussed in Part II.C. below, that a supervised-release-term adjustment was available, we reject the view of the government and the district court that *Barresi I* foreclosed modification of the supervised-release term imposed on Barresi.

### B. *The Reasonableness of the Magnitude of the Departure*

In challenging the district court's decision that the extent of the departure would remain as originally imposed, Barresi argues not only that the extent of the departure was unreasonable but also that "despite this Court's directive, the district court deemed the issue [of sentencing] moot and refused to re-tabulate its upward departure so that it would only take into account the two grounds which this Court deemed permissible for upward departure." (Barresi brief on appeal at 23; *see also* Barresi reply brief on appeal at 1 (contending that the court "provided no explanation" for the magnitude of the departure at resentencing).) The contentions that the district court believed the matter moot, refused to confine its reconsideration to the two permissible grounds, and gave no explanation are squarely contradicted by the record.

As set forth in Part I.B. above, the district court began its decision at the resentencing hearing by stating, "I don't agree with the government that addressing sentencing at this time is moot . . . ." (2003 Tr. at 8.) The court then made clear that it would confine its consideration to the two permissible grounds on which it had found a departure warranted, stating that it would "go forward with this sentencing procedure eliminating the two factors which the Court of Appeals found improper" (*id.*); would "tak[e] into account only the extent of the harm to the F.B.I. and to Mr. Barres[i]'s victim" (*id.*); and would "again depart eight levels on all of the legal grounds for departure . . . [that] remain applicable" (*id.*). The court stated, "Of course I'm not including the impermissible grounds . . . ." (*Id.* at 10.) The record thus makes it clear that the magnitude of the departure imposed at resentencing was based only on the two grounds that this Court had found permissible.

■ Nor do we find merit in Barresi's contention that the extent of the departure imposed by the district court on resentencing was either unexplained or unreasonable. In making its determination as to the extent of the departure that was warranted, the court was required to "make clear on the record how the court determined the magnitude of the departure," *United States v. Campbell,* 967 F.2d 20, 26–27 (2d Cir.1992); *see, e.g., United States v. Evans,* 352 F.3d 65, 72 (2d Cir. 2003), although it was not required to undertake a " 'mechanical level-by-level review of the extent of the upward departure.' " *United States v. Campbell,* 967 F.2d at 26 (quoting *United States v. Rodriguez,* 968 F.2d 130, 140 (2d Cir.), *cert. denied,* 506 U.S. 847, 113 S.Ct. 140, 121 L.Ed.2d 92 (1992)). The requirement that an explanation be provided is met if the district judge states his reasons for de-

parting and then announces that the sentence he is imposing is appropriate under the circumstances. *See, e.g., United States v. Campbell,* 967 F.2d at 26.

■ In resentencing Barresi in reliance on only the two permissible factors, the district court incorporated by reference its discussion of those factors at the original sentencing hearing held on January 2, 2002, in which the court discussed in detail the harms caused by Barresi's offense, both in the misdirection of valuable federal investigative resources (*see* Hearing Transcript, January 2, 2002 ("2002 Hearing"), at 24), and the emotional harm suffered by the target of Barresi's false accusations (*see id.* at 26–27). We consider the statements made at the 2003 hearing sufficient to discharge the district court's obligation to make clear on the record how it determined the extent of the departure imposed. Further, having reviewed the 2002 Hearing explanations, which are summarized in detail in *Barresi I,* 316 F.3d at 71–72, familiarity with which is assumed, and giving due deference to the district court, we regard the court's explanations as sufficient to show that an eight-step departure was not unreasonable.

Imprisonment, however, is ordered in terms of a precise number of months, and our remand for reconsideration required not only a decision as to the appropriate number of steps to climb on the offense level ladder to reach a given Guidelines range but also a determination of the precise number of months to be imposed within the resulting range. The district court determined at resentencing that the eight-step departure was warranted; but it declined to make a finding as to the sentence that would have been imposed within that range, stating, "I don't see any reason for me to attempt to analyze precisely what sentence would have been imposed had I not included the[ impermissible factors] where the defendant has already served

his time." (2003 Tr. at 10.) Such a reluctance is understandable in view of the fact that time gone by cannot be recaptured. However, given the possibility that Barresi's sentence could be adjusted by a means other than reducing his prison term—*i.e.,* by reducing his term of supervised release—we conclude that the court's failure to determine precisely what prison term within the range of 15–21 months would have been imposed, based only on the permissible factors, left unfinished business.

C. *The Permissibility of Reducing the Term of Supervised Release*

■ As discussed in Part II.A. above, the district court's view that *Barresi I* foreclosed any adjustment of Barresi's term of supervised release was an unduly narrow interpretation and cannot be upheld as a basis for the court's refusal to consider a reduction of his supervised-release term as a remedy if the prison term imposed was excessive. The court stated in the alternative, however, that even if the *Barresi I* mandate did not foreclose adjustment of the supervised-release term, the court would nonetheless "decline to downwardly depart to reduce the period of supervised release, and ... it would ... require a downward departure in order to effectuate that." (2003 Tr. at 9.) We conclude that this alternative basis for refusing to consider an adjustment in Barresi's supervised-release term reflected an error of law.

Preliminarily, we note that if the three-year supervised-release term imposed on Barresi had been mandated by statute, the district court would have been correct that Barresi's supervised-release term could not be reduced to compensate for extra time spent in prison. *See United States v. Johnson,* 529 U.S. 53, 54–56, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (where a defendant has served excess prison time but

had been sentenced to the statutory minimum period of supervised release, the excess portion of his prison term cannot be credited against his supervised-release term); *see also id.* at 60, 120 S.Ct. 1114 (such a defendant is free to seek early termination of his supervised-release term pursuant to 18 U.S.C. § 3583(e)(1) (court may terminate an individual's supervised release obligations "at any time after the expiration of one year . . . if it is satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice")). However, no statutory section required that Barresi be ordered to serve any minimum term of supervised release for his § 1001 offense. The parameters of his supervised-release term were thus governed by the Guidelines.

The Guidelines provide that the sentencing court "shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed, or when required by statute." Guidelines § 5D1.1(a). The ranges of supervised-release periods specified by the Guidelines vary according to the classification of the defendant's offense. For a defendant convicted of a Class D felony, if there is no statutory provision requiring a longer term, the Guidelines provide that "if a term of supervised release is ordered, . . . the length of the term shall be . . . at least two years but not more than three years." *Id.* § 5D1.2(a)(2).

Barresi's violation of 18 U.S.C. § 1001(a)(2) was a Class D felony, *see* 18 U.S.C. § 3559(a)(4). Accordingly, under Guidelines § 5D1.2(a)(2), the minimum supervised-release term that the court could order (without a departure) having imposed a prison term (pursuant to a departure) of more than one year, was two years. The supervised-release term actually ordered for Barresi was three years, the maximum, not the minimum. Thus,

the district court could have reduced Barresi's supervised-release term from three years to as low as two, within the range specified by the Guidelines; no departure would have been needed.

■ As the district court's refusals on remand (a) to determine where within the Guidelines range of 15–21 months it would have sentenced Barresi without consideration of the impermissible factors, and (b) to consider reducing Barresi's supervised-release term, were influenced by its mistaken views that such a reduction would contravene *Barresi I* and would require a Guidelines departure, we remand once again for reassessment of the sentence by the district court. The court should make a finding, with an explanation, as to the precise number of months of imprisonment it would have ordered in the absence of consideration of the impermissible factors. If the court determines that it would have imposed a prison term of 21 months, it need proceed no further. If it determines that it would have imposed a prison term of less than 21 months, the court should then consider whether it wishes to exercise its discretion to reduce Barresi's supervised-release term below three years—but not below two years—in order to compensate for the fact that Barresi completed his 21–month prison term before his resentencing took place.

D. *The Commencement of Supervised Release*

Finally, we note a matter that is only tangentially related to the issues raised on this appeal but that appears to reflect some confusion in the record below as to the timing of the commencement of supervised release. When the district court rejected Barresi's request at the 2003 hearing for a reduction in his supervised-release term, Barresi asked that his term of supervised release be deemed to have

commenced on April 1, 2003, when he was released from prison. (*See* 2003 Tr. at 10.) The district court, however, indicated that his supervised-release term would begin on May 29, 2003, stating that "the defense [had] made a major point of not treating Mr. Barres[i] as under supervised release," that "that was the position that Mr. Barres[i] himself took, and that his attorney took, and he did not submit himself to supervised release. Therefore, I had to impose pretrial conditions on him, and advise him that he remain[ed] under pretrial supervision." (*Id.*)

The view that Barresi's supervised-release term began at some time later than his release from prison was contrary to the controlling statutory section, which provides that "[t]he term of supervised release commences on the day the person is released from imprisonment," 18 U.S.C. § 3624(e). Congress's intent that there be no hiatus between the term of imprisonment and the term of supervised release is further reflected in the provision that "[a] prisoner whose sentence includes a term of supervised release after imprisonment *shall be released by the Bureau of Prisons to the supervision of a probation officer* who shall, during the term imposed, supervise the person released." *Id.* (emphasis added); *see generally United States v. Johnson*, 529 U.S. at 56–58, 120 S.Ct. 1114.

The notion that Barresi himself, or his attorneys, could somehow control the starting date for his supervised-release term by taking a "position" or by "not treating" him as under supervised release is contrary to law. The record is unclear as to precisely what occurred when Barresi was released from prison, and we express no view as to the appropriate consequences if there was any lack of compliance with the statute. We assume, however, that any proceedings on remand will properly reflect the statutory requirements with regard to the commencement of supervised release.

## CONCLUSION

We have considered all of the parties' arguments in support of their respective positions on this appeal and, except to the extent indicated above, have found them to be without merit. The matter is remanded to the district court for further proceedings not inconsistent with this opinion. We express no view as to the effect that any post-resentencing events may have on the proceedings on this remand.

The mandate shall issue on the seventh day after the filing of this opinion.