**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILSON BEN JONES,

Defendant - Appellant.

No. 02-1459

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**NO. 02-CR-30-WM**

---

Lynn Hartfield, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, and Charles Szekely, Assistant Federal Public Defender, on the briefs), Office of the Federal Public Defender, District of Colorado and Wyoming, Denver, Colorado, appearing for Appellant.

John M. Hutchins, Assistant United States Attorney (John W. Suthers, United States Attorney, with him on the brief), Office of the United States Attorney, Denver, Colorado, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **BRORBY**, and **O'BRIEN**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

Defendant-appellant, Wilson Ben Jones, pled guilty to three counts of involuntary manslaughter, in violation of 18 U.S.C. §§ 1112(a) and 1153, and the district court sentenced him to 71 months imprisonment. Jones filed a timely notice of appeal on October 11, 2002. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

Jones' three convictions stem from an alcohol-related accident on the Ute Mountain Indian Reservation on December 8, 2001, in which Rufus Cayaditto, his common-law wife, Latanyia Begay, and their infant child, Jasmyne Cayaditto, lost their lives. While driving a 1988 Ford Bronco II on Colorado Highway 160, Jones crossed the center line and collided head on with the victims' Dodge sedan. At the time of the accident, Jones' blood-alcohol level was .266, over twice the legal limit. Jones pled guilty to three counts of involuntary manslaughter under 18 U.S.C. § 1112.

At sentencing, the district court determined Jones' adjusted offense level as follows. First, the district court concluded that Jones' conduct was "reckless" under § 2A1.4 and set his base offense level at 14. Second, the court added three offense levels under § 3D1.2, to account for the multiple counts of conviction, bringing the adjusted offense level to 17. Finally, the district court decreased Jones' offense level by three levels, pursuant to the acceptance-of-responsibility

provision, § 3E1.1. This resulted in an adjusted base offense level of 14.

The Presentencing Report ("PSR") recommended a nine-level upward departure in offense level and the imposition of the statutory maximum of 72 months imprisonment.[1] In support of the PSR, the government filed a Motion for Upward Departure in which it also recommended a nine-level upward departure.[2]

The district court agreed that an upward departure for offense level was appropriate, but it did not adopt the recommended departure or the methodology set forth in either the PSR or the government's motion. Instead, the district court departed upward seven levels, bringing the offense level to 21. The district court arrived at this conclusion, based on the following allocation:

| Factor[3] | Increase to offense level |
|---|---|
| Significant danger to public safety created by Jones' conduct | 1 |
| Multiple deaths within a single family unit | 1 |

---

[1] Under 18 U.S.C. § 1112, the statutory maximum for involuntary manslaughter is six years (72 months).

[2] The government's methodology differed from the methodology employed in the PSR.

[3] Although the district court mentioned five factors in its oral remarks at the sentencing hearing, we limit our review to those factors set forth in the district court's judgment. *Cf. United States v. Jose-Gonzalez*, 291 F.3d 697, 701-02 (10th Cir. 2002) (citation omitted) ("[W]e would be most reluctant to use a court's oral remarks to undermine an explanation for departure that is set out in the judgment and reflected in the court's computation of departure.").

| Extreme recklessness of Jones' conduct | 5 |
|---|---|
| **Total** | 7 |

The district court then increased Jones' criminal-history category from II to IV, based on his five prior drunk-driving convictions.[4]

The district court imposed a sentence of 71 months for each count, to be served concurrently, which was within the guideline range for offense level 21 and criminal-history category IV. This appeal followed.

## II. Discussion

In this case, the sole question we must consider is whether the district court erred in concluding that Jones' conduct fell outside the "heartland" of involuntary manslaughter cases sufficient to support a seven-level upward departure in offense level under the Sentencing Guidelines. For the reasons set forth below, we affirm the district court's sentencing determination.

A.   Standard of Review and Overview of Applicable Law

In criminal cases other than child crimes and sex offenses, a sentencing court may depart from the applicable guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, *or to a degree*, not

---

[4] Only one of Jones' drunk-driving convictions was taken into account in the original criminal-history category calculation. Jones conceded that an upward departure in criminal-history category was appropriate and does not challenge this aspect of the district court's departure.

adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b)(1) (emphasis added). In reviewing a district court's sentencing determination, we accept the district court's findings of fact unless clearly erroneous. 18 U.S.C. § 3742(e). Further, we generally "give due deference to the district court's application of the guidelines to the facts." *Id.* Where the district court departs from the sentencing guidelines, however, we review de novo the district court's determinations under 18 U.S.C. § 3742(e)(3)(A) and (B). *Id.*

Application of the de novo standard of review in sentencing-departure cases represents a shift from our earlier case law. Prior to the enactment of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650, we reviewed sentencing departures under a "unitary abuse of discretion standard," applying the four-part test set forth in *United States v. Collins*, 122 F.3d 1297, 1302-03 (10th Cir. 1997). The amendments contained in the PROTECT Act[5] modify the unitary abuse of discretion standard; the applicable analytical framework, however, remains generally consistent with the four-part test set forth in *Collins*.

In light of the PROTECT Act's amendments, our review of the district

---

[5] The parties in this case do not dispute the applicability of the PROTECT Act's amendments.

court's sentencing departure shall proceed as follows. First, we must ascertain whether the district court set forth, in a written order of judgment, its specific reasons for departure. 18 U.S.C. § 3742(e)(3)(A); 18 U.S.C. § 3553(c)(2). Second, we must consider whether the factors the district court relied upon "advance the objectives set forth in section 3553(a)(2),"[6] 18 U.S.C. § 3742(e)(3)(B)(i), and ensure that the district court's reliance on those factors did not violate any specific prohibition in the Guidelines, *Koon v. United States*, 518 U.S. 81, 106 (1996). Our review under this second prong of the analysis is de novo. 18 U.S.C. § 3742(e)[7]; *Collins*, 122 F.3d at 1302-03. Third, we must

---

[6] Section 3553(a)(2) provides:

The court, in determining the particular sentence to be imposed, shall consider–
. . .
(2) the need for the sentence imposed–
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

[7] Section 3742(e) provides in relevant part:

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly

(continued...)

consider whether the factors the district court relied upon were "authorized under section 3553(b)"[8] and "justified by the facts of the case."  18 U.S.C. § 3742(e)(3)(B)(ii)-(iii).  To determine whether the factors are "authorized," we

---

[7](...continued)
erroneous and, except with respect to determinations made under subsection(3)(A) and (3)(B), shall give due deference to the district court's application of the guidelines to the facts.  With respect to determinations under subsection (3)(A) and (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e).

[8] Section 3553(b)(1), applicable in cases other than child crimes and sexual offenses, provides:

Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.  In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.  In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2).  In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

18 U.S.C. § 3553(b)(1).

look to 18 U.S.C. § 3553(b)(1), which provides that a district court may depart if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."  This third step in the analysis is commonly called the "heartland" determination.  *See Collins,* 122 F.3d at 1303 (reviewing court must determine "whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland [sufficient to] warrant[] a departure").  We review de novo this "application of the guidelines to the facts" under 18 U.S.C. § 3742(e)(3)(B).[9]  *See* 18 U.S.C. § 3742(e).  Finally, we must ask whether the district court's sentence "departs to an unreasonable degree from the applicable guidelines range."  18 U.S.C. § 3742(e)(3)(C); *accord Collins*, 122 F.3d at 1303 (reviewing court must determine "whether the degree of departure is reasonable").  In reviewing the degree of departure, we give due deference to the district court, 18 U.S.C. § 3742(e), and will not reverse absent an abuse of discretion.  *United States v. Goldberg*, 295 F.3d 1133, 1138, 1141 (10th Cir. 2002).

We proceed to consider the district court's sentence in this case, in light of

---

[9] To be clear:  although we review de novo whether a particular departure factor is "authorized under section 3553(b)" and "justified by the facts of the case," we review the district court's underlying findings of fact for clear error. *See* 18 U.S.C. § 3742(e).

the preceding framework.

B.      Analysis

1.      *Whether the district court stated its reasons for departure "with specificity."*

Under 18 U.S.C. § 3553(c)(2), a district court must set forth, in a written order of judgment, its reasons for departure "with specificity."  18 U.S.C. § 3553(c)(2).  In this case, in its October 8, 2002, judgment, the district court concluded that Jones' conduct fell outside the "heartland" of involuntary manslaughter cases sufficient to warrant an upward departure.  The district court based its conclusion on the following three factors:  (1) the significant danger to public safety created by Jones' conduct, pursuant to U.S.S.G. § 5K2.14; (2) the multiple deaths, all within a single family, that resulted from Jones' criminal conduct, pursuant to the background commentary to U.S.S.G. § 3D1.4; and (3) the "extreme" recklessness of Jones' conduct.  Thus, the district court satisfied section 3553(c)(2)'s requirement of a written order and judgment setting forth the specific reasons for departure.

2.      *Whether the district court relied on impermissible factors in concluding that Jones' conduct fell outside the heartland of involuntary manslaughter cases.*

In determining whether to depart from the Sentencing Guidelines, a district

court must determine whether the case falls within the "heartland" of cases embodying the conduct contemplated by each guideline, or whether some aggravating or mitigating circumstance renders the case atypical or "unusual." *United States v. Whiteskunk*, 162 F.3d 1244, 1248 (10th Cir. 1998) (citing *Koon v. United States*, 518 U.S. 81, 93 (1996)). As the Supreme Court noted in *Koon*:

> The Guidelines . . . "place essentially no limit on the number of potential factors that may warrant a departure." The Commission set forth factors courts may not consider under any circumstances but made clear that with those exceptions, it "does not intend to limit the kinds of factors, *whether or not mentioned anywhere else in the guidelines*, that could constitute grounds for departure in an unusual case."

518 U.S. at 106 (emphasis added) (citation omitted). In addition to the restrictions set forth in the Guidelines, we must also consider whether the factors the district court relied upon "advance the objectives set forth in section 3553(a)(2)." 18 U.S.C. § 3742(e)(3)(B)(i).

With this in mind, we proceed to consider the three factors the district court relied upon in making its heartland determination.

           a.      *The district court's factors advance the objectives set forth in section 3553(a)(2) and do not violate any restriction set forth in the Guidelines.*

First, with respect to the district court's reliance on the significant danger to public safety created by Jones' conduct, U.S.S.G. § 5K2.14 specifically

- 10 -

provides that if "[public] safety was significantly endangered [by the defendant's conduct], the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense."  Consistent with section 5K2.14, we have previously recognized that, in determining whether a case falls within the heartland of involuntary manslaughter cases, a district court may properly consider the "degree" of danger to public safety created by the defendant's conduct.  *Whiteskunk*, 162 F.3d at 1251-52.  The degree of danger reflects on the "seriousness" of the offense, in accordance with 18 U.S.C. § 3553(a)(2)(A).

Second, with respect to the "extreme" recklessness exhibited by Jones' conduct, we held in *Whiteskunk* that a sentencing court may properly consider the "varying degrees of recklessness" in making its heartland determination.[10]  *See*

---

[10] We noted in *Whiteskunk*:

Under the law, we designate a rather broad category of conduct as "reckless."  Some of the conduct falling within the domain we call "reckless behavior" is actually closer to mere negligence, while other behavior within the range of recklessness definitely approaches intentional conduct.  Yet, we place all of these varying degrees of conduct under one label.  Admittedly, it is often necessary to draw artificial lines when classifying defendants' conduct, but it would be unfair not to recognize and accommodate this varying spectrum of culpability whenever possible.  The sentencing phase is one aspect of the process where the artificial labels applied to classes of conduct need not necessarily constrain the court.  If, in the district court's discretion, it finds the facts of the particular involuntary manslaughter case indicate a degree of recklessness that falls on the periphery of reckless conduct—either minimally reckless or

(continued...)

162 F.3d at 1251-52. Indeed, "[a]n extra measure of criminal depravity is precisely the type of factual circumstance the departure mechanism is designed to address," *United States v. Smith*, 133 F.3d 737, 751 (10th Cir. 1997), inasmuch as the degree of recklessness bears heavily on the "seriousness" of the offense, *accord* 18 U.S.C. § 3553(a)(2)(A).

Further, in *Whiteskunk*, we expressly sanctioned the district court's reliance on the defendant's blood-alcohol level and prior conviction for drunk driving in considering the "degree" of recklessness exhibited by the defendant's conduct. 162 F.2d at 1252. In this case, as in *Whiteskunk*, Jones' blood-alcohol level was more than twice the legal limit.[11] In addition, Jones had *five* previous drunk-driving convictions, putting him "on notice of [his] propensity to drink and drive and the dangerousness of such conduct." *Id.* at 1252-53; *accord id*. at 1251 n.2 (citing cases). Thus, the district court properly considered these two specific facts in concluding that Jones' conduct exhibited "extreme" recklessness and created a significant danger to public safety.

---

[10](...continued)
excessively reckless—then the court should be free to depart on that basis for sentencing purposes.

*Id.* at 1251.

[11] Numerous courts have based departure decisions on the defendant's excessive speed. *Whiteskunk*, 162 F.3d at 1251 n.2 (citing cases). Insofar as increased intoxication and excess speed both increase the probability of an automobile accident, these decisions support the district court's reasoning.

Finally, we consider the district court's third basis for departure: the multiple deaths, all within a single family, that resulted from Jones' criminal conduct. We have previously noted, in dicta, that "[m]ultiple deaths resulting from [a] defendant's conduct . . . presents a permissible ground for departure from the standard involuntary manslaughter Guideline range." *Whiteskunk*, 162 F.3d at 1250; *cf.* U.S.S.G. § 5K2.1 (recognizing "multiple deaths" as an appropriate factor). In this case, however, Jones was convicted on three separate counts for the three deaths that resulted from his conduct, and the district court considered these counts in determining Jones' adjusted offense level. Thus, the fact that multiple deaths occurred, standing alone, cannot support the district court's decision to depart in this case.

The district court concluded, however, that, in killing a mother, father, and infant child, Jones' conduct was "extraordinary," and that "the multiple counts attributed to the [three] deaths . . . do[] not contemplate the tragedy that occurred here." As the district court noted, "[t]he normal tragedy of multiple deaths was worsened by the complete elimination of one branch of [two] different families." We find the district court's reasoning persuasive. *Cf.* U.S.S.G. § 3D1.4 (recognizing that, in "unusual circumstances," the Guidelines' approach for determining the base offense level for multiple counts "could produce adjustments for the additional counts that are inadequate"). Thus, we hold that the district

court properly considered the "unusual circumstance" of killing an entire family in making its heartland determination. *Accord* 18 U.S.C. § 3553(a)(2)(A) (noting the need for the sentence imposed "to provide just punishment").

b.     *The district court did not engage in impermissible "double counting" in basing its decision to depart vertically, in part, on Jones' prior drunk-driving convictions.*

Jones argues, however, that the district court engaged in impermissible "double counting," insofar as the district court increased his criminal-history score based on his prior criminal convictions *and* increased his offense level, based, in part, on his prior criminal convictions for drunk driving. We disagree.

We have previously held that a district court may consider prior criminal convictions in determining both the appropriate criminal-history level and offense level under the Sentencing Guidelines. *United States v. Alessandroni*, 982 F.2d 419, 423 (10th Cir. 1992). In reaching this conclusion, we focused on the distinct purposes furthered by the two categories. *Id.* "Whereas the offense level reflects the seriousness of the offense, the criminal history score reflects an assessment of the individual and the need to increase the sentence incrementally to deter the

- 14 -

defendant from further criminal activity."[12]  *Id.*; *see also United States v.*

*Campbell*, 967 F.2d 20, 24 (2d Cir. 1992) ("[I]t may be appropriate to count a

single factor both in assessing the defendant's criminal history category and in

calculating the applicable offense level since the two measure different things.").

We recognize that *Alessandroni* is distinguishable from the instant case, in

that the court in *Alessandroni* found that Congress *expressly* provided for

consideration of the prior felony conviction in both the criminal-history category

and the offense-level calculation.[13]  Nevertheless, the court's rationale is equally

---

[12] As the Second Circuit recently noted, "several courts have observed that the Guidelines' determination of offense level and criminal history category serve different purposes (gauging the seriousness of the crime versus increasing punishment based on the likelihood of recidivism), and thus consideration of the same factor in each category is permissible." *United States v. Aska*, 314 F.3d 75, 78 (2d Cir. 2002) (citing cases); *but cf. United States v. Barresi*, 316 F.3d 69, 74-75 (2d Cir. 2002) ("There is no doubt that the court would not have been permitted to use [defendant's] prior record in its initial decision to depart upward vertically, since the adequacy of a prior criminal record is a proper consideration for horizontal but not vertical departures. . . .  [T]he district court was also not permitted to take the defendant's prior record into account in determining the extent of a vertical upward departure.  Consideration of the defendant's prior record does not provide a metric for the extent of departure, but only a reason to depart more."); *United States v. Panadero*, 7 F.3d 691, 698 (7th Cir. 1993) (noting in dicta that "[a] one category criminal history departure based on the same factor for which Panadero had already received a three-level increase in offense level may constitute impermissible double counting").

[13] The district court in *Alessandroni* applied U.S.S.G. § 2K2.1 in determining the base offense level and section 4A.1.1 in determining the proper criminal-history category.  982 F.2d at 420.  In this case, we do not have a provision like section 2K2.1 to which we might look for congressional intent regarding the appropriateness of considering a prior criminal conviction in

(continued...)

- 15 -

applicable to the district court's "dual use" in the present case. Under

*Alessandroni*, a prior criminal conviction is relevant in determining the proper

criminal-history category, insofar as it bears on the likelihood of recidivism, and

it is also relevant, in certain circumstances, in determining the "seriousness of the

offense," 982 F.2d at 423, for example, as it relates to the defendant's scienter,

*see Whiteskunk*, 162 F.3d at 1252-53.

Here, the district court found that "[Jones'] conduct was excessively

reckless and so disrespectful of human life that [it] approache[d] [a] deliberate or

intentional act[]." Thus, with respect to the district court's use of Jones' prior

criminal convictions in determining the appropriate offense level, the district

court relied on Jones' prior drunk-driving convictions as evidence of the

*deliberateness* of his conduct.[14] As in *Whiteskunk*, Jones' *five* previous drunk-

---

[13](...continued)
determining the appropriate offense level. At the same time, Jones points to no
Guidelines section that would suggest we should not consider a prior criminal
conviction in determining the appropriate offense level in this particular case.
The fact that Congress has expressly sanctioned the use of prior criminal
convictions in determining the offense level in certain Guidelines sections — for
example, § 2K2.1 (Firearms), § 2P1.1 (Escape), and § 2L2.1 (Illegal Re-entry into
the United States) — demonstrates that Congress has recognized that, in some
instances, a prior criminal conviction is relevant in determining the "seriousness"
of the offense.

[14] In the present case, the district court's use of defendant's prior
convictions as evidence of the deliberateness of his conduct distinguishes it from
the Second Circuit's decision in *United States v. Barresi*, 316 F.3d 69 (2d Cir.
2002). In *Barresi*, the Second Circuit rejected the district court's reliance on the

(continued...)

driving convictions placed him "on notice of [his] propensity to drink and drive and the dangerousness of such conduct." *Id.* at 1252-53. Accordingly, the district court logically concluded that Jones' prior drunk-driving convictions increased the "seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A); *see Alessandroni*, 982 F.2d at 423.

Based on the above, we reject Jones' contention that the district court's reliance on his prior criminal convictions in deciding to depart vertically constituted impermissible "double counting."[15]

     c.     <u>*Summary*</u>

In conclusion, all three factors the district court relied upon were permissible, insofar as the factors advanced the objectives set forth in 18 U.S.C. § 3553(a)(2), *see* 18 U.S.C. § 3742(e)(3)(B)(i), and did not run afoul of any specific prohibition in the Guidelines, *Koon*, 518 U.S. at 106.

     3.     *Whether the district court erred in concluding that, based on the aforementioned factors, Jones' conduct fell outside the heartland of involuntary manslaughter cases.*

---

[14](...continued) defendant's prior record in making its decision to depart upward vertically. The district court in *Barresi* based its decision, however, on recidivism concerns, not the "seriousness" of the defendant's conduct. *Id.* at 72.

[15] Our holding is limited to the facts of this case. We do not hold that a district court may always consider prior criminal convictions in considering the seriousness of the offense and the appropriateness of a vertical departure.

We must next consider whether the factors the district court relied upon in making its heartland determination were "authorized under section 3553(b)" and "justified by the facts of the case." 18 U.S.C. § 3742(e)(3)(B)(ii)-(iii). Under 18 U.S.C. § 3553(b)(1), a district court may depart if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

In this case, the district court concluded that Jones' case was outside the heartland of involuntary manslaughter cases, based on the factors discussed in section II.B.1, *supra*. In reaching its conclusion, the district court relied on the factual similarity between the present case and *Whiteskunk*, a prior Tenth Circuit case in which we upheld the district court's decision to depart. Based on *Whiteskunk*, we agree with the district court that the "departure factors . . . remove[d] [Jones' conduct] from the applicable Guideline heartland [sufficient to] warrant[] a departure." *Collins*, 122 F.3d at 1303. Thus, the district court based its departure determination on factors "authorized under section 3553(b)." 18 U.S.C. § 3742(e)(3)(B)(ii). Further, the factors the district court relied upon were "justified by the facts of the case." *Id.* § 3742(e)(3)(B)(iii).

4. *Whether the district court's degree of departure was reasonable.*

Finally, we must consider whether the district court's sentence "depart[ed]

- 18 -

to an unreasonable degree from the applicable guidelines range." 18 U.S.C. § 3742(e)(3)(C). "In determining whether the degree of departure is reasonable . . ., 'the appellate court should afford the trial court some discretion, as we should not lightly overturn determinations of the appropriate degree of departure.'" *Goldberg*, 295 F.3d at 1138 (quoting *United States v. Flinn*, 987 F.2d 1497, 1504 (10th Cir. 1993)). In reviewing the reasonableness of the district court's degree of departure, we consider the following factors: "'the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities.'" *Collins,* 122 F.3d at 1308-09 (quoting *United States v. White*, 893 F.2d 276, 278 (10th Cir. 1990)) (citing 18 U.S.C. § 3742(e) and 18 U.S.C. § 3553(a)). As we noted in *United States v. Jackson*:

> Although formulas of mathematical exactitude are neither required nor possible, the district court should articulate the objective criteria used as a basis for determining the actual sentence imposed. In many instances, this will consist of an extension of or extrapolation from other guideline levels or principles, or use of an analogy to other closely related conduct or circumstances that are addressed by the guidelines.

921 F.2d 985, 990-91 (10th Cir. 1990).

In this case, the district court departed upward one level based on the significant danger to public safety created by Jones' conduct. As the district

court's degree of departure—one level—represents the minimum upward departure the court could have imposed, and in light of the Guidelines' express sanction of this departure factor, *see* U.S.S.G. § 5K2.14, we find that the district court's departure was reasonable.[16] With respect to the upward departure for the multiple deaths within a single family unit, we reach the same conclusion. *See* U.S.S.G. § 3D1.4 (recognizing that, in "unusual circumstances," the Guidelines' approach for determining the base offense level for multiple counts "could produce adjustments for the additional counts that are inadequate"); *cf.* U.S.S.G. § 5K2.1 (recognizing "multiple deaths" as an appropriate departure factor).

Regarding the five-level upward departure for the "extreme" recklessness of Jones' conduct, however, we have some concerns with the district court's analogy to *brandishing a firearm* under U.S.S.G. § 2B3.1. Although "[a] sentence imposed based upon either extrapolation or analogy from the guidelines will ordinarily meet the requirements of proportionality and uniformity," *United States v. Kalady*, 941 F.2d 1090, 1101 (10th Cir. 1991), we have indicated that the methodology must be "'reasonable,'" *Collins*, 122 F.3d at 1309.

---

[16] We are mindful of our past statement in *United States v. Flinn*, refusing to characterize one-level increases as per se reasonable. 987 F.2d 1497, 1503 (10th Cir. 1993) (rejecting government's argument that "[b]ecause a one-level increase is the minimum departure, . . . once an upward departure is justified, such a departure is necessarily reasonable with or without an explanation"). Here, however, the district court provided sufficient explanation, insofar as it "hitched" its decision to specific provisions in the Guidelines.

The provision upon which the district court relied, section 2B3.1, distinguishes between a "firearm" and other types of "dangerous weapon[s]." Thus, even assuming[17] that the district court's reliance on section 2B3.1 was appropriate in this context, the district court, in analogizing a drunk driver in a Ford Bronco to a "firearm," as opposed to a "dangerous weapon," proceeded in direct contravention of the Guidelines' express language. *See Kalady*, 941 F.2d at 1101 ("[T]he task of . . . the sentencing court . . . is to attempt to predict what the Sentencing Commission would have established as a guideline range had it adequately considered the circumstances justifying the departure."). Thus, in relying on section 2B3.1, the district court should have, at most, imposed a four-level increase (based on the use of a "dangerous weapon"), rather than a five-level increase.

That said, "we do not impose [the use of an analogy] as a mechanical formula." *Jackson*, 921 F.2d at 993. Further, under *Williams v. United States*, we should not remand if we are satisfied, as we are, that the district court would have imposed the same sentence had it not relied upon the improper analogy. 503 U.S. 193, 203-04 (1992). "A sentence . . . can be 'reasonable' even if some of the reasons given by the district court to justify the departure from the presumptive

_____

[17] Section 2A2.2 provides the more appropriate analogy: a four-level increase for aggravated assault where the defendant used a dangerous weapon.

guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure." *Id.* at 204.

Insofar as the district court's methodology would have been "reasonable" had it analogized Jones' conduct to the use[18] of a "dangerous weapon"[19]—rather than the "brandishing" of a "firearm"—we may reduce the district court's five-level increase accordingly, resulting in a four-level increase for Jones' "extreme" recklessness. *Accord* U.S.S.G. § 2A2.2 (providing for a four-level increase where a "dangerous weapon" was used in an aggravated assault). Further, the district court concluded that Jones' offense level should be increased *at least* two levels,

---

[18] Although Jones argues that he did not intend to "use" his truck as a weapon, *cf. United States v. Dayea*, 32 F.3d 1377, 1380 (9th Cir. 1994), the district court concluded that "[Jones'] conduct was excessively reckless and so disrespectful of human life that [it] approache[d] [a] deliberate or intentional act[]," and we agree. Although Jones' conduct may not fall within the Guidelines' definition of "brandished," insofar as Jones did not use his vehicle "in order to intimidate," *see* U.S.S.G. § 1B1.1, Application note 1(c), his conduct falls well within the Guidelines' definition of "otherwise used," *Id.*, Application note 1(f). Nothing in sections 2B3.1 (robbery), 2A2.2 (aggravated assault), or 1B1.1 (defining "otherwise used") requires that the defendant have the *specific intent* to use the dangerous weapon; rather, the Guidelines simply suggest that the instrumentality must be used in such a way that it presents a high risk of inflicting injury. In this case, Jones "active[ly] employ[ed]" the dangerous weapon in question and it was an "operative factor" in his commission of the predicate offenses. *Cf. Bailey v. United States*, 516 U.S. 137, 143 (1995) (defining "use" as "an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense") (emphasis in original).

[19] *See* U.S.S.G. § 1B1.1 (defining a "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury"); *accord Dayea* , 32 F.3d at 1379 ("no question that a motor vehicle may qualify as a dangerous weapon").

based on the presence of the other two factors; we agree, and find that a three-level increase would have remained within the boundaries of "reasonableness."

In light of the above, we conclude that the district court's seven-level upward departure was reasonable despite the use of an improper analogy; thus, we need not remand to the district court for resentencing. *See United States v. O'Dell*, 965 F.2d 937, 939 (10th Cir. 1992).

## III.  Conclusion

Based on the foregoing, we AFFIRM the district court's sentence. Appellee's motion to file a supplemental memorandum brief is GRANTED.