**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 14 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES HOWARD PLATT,

    Defendant-Appellant.

No. 02-5200
(N.D. Okla.)
(D.Ct. No. 02-CR-36-H)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On October 30, 2002, James Howard Platt was sentenced for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(G)(1)

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and 924(a)(2).  He appeals his sentence, primarily challenging the district court's

upward departure of two criminal history categories pursuant to USSG § 4A1.3.

He also contests the imposition of a $1,000.00 fine.  Exercising jurisdiction

pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

BACKGROUND

On May 20, 2002, Platt pled guilty to one count of possession of a firearm

and ammunition by a convicted felon.  Before sentencing, a number of filings

were made to the district court, including:  1) a motion by the government for an

upward departure based on Platt's uncounted prior criminal convictions, prior

arrests, and his alleged uncharged involvement in the 1998 homicide of William

Carroll[1]; 2) Platt's objections to the presentence investigation report ("PSIR"); 3)

the government's response to his objections; and 4) Platt's response to the motion

seeking an upward departure.  At an initial hearing[2], the district court overruled

Platt's objections to the PSIR, but ordered a continuance to later consider the

government's motion for an upward departure at sentencing.

---

[1]  In connection with the government's allegation that Platt committed a prior, uncharged homicide, the parties stipulated that an individual named William Carroll was murdered.  Carroll was attacked and stabbed on August 12, 1998, and later died of his wounds.

[2]  Sentencing was initially set for August 23, 2002, but was subsequently rescheduled for September 27, 2002.  The sentencing hearing was again rescheduled for October 18, 2002, due to defense counsel's motion to withdraw, which was granted on September 23, 2002.

At the October 30, 2002 sentencing, the district court heard testimony from four police officers who investigated Carroll's stabbing and death. At the close of evidence, the district court addressed the government's motion for an upward departure, specifically declining to consider Platt's arrest record in its deliberation. Instead, it determined that other factors existed to support an increase in Platt's criminal history category of II because it inadequately "reflect[ed] the likelihood that the defendant will commit other crimes." (R., Vol. V at 145.)

The district court considered Platt's 1985 conviction for being a felon in possession of a firearm, resulting in two years imprisonment. Because the conviction was over fifteen years old, it was not considered in determining Platt's criminal history category under USSG § 4A1.2(e). However, the district court found the prior conviction relevant under USSG § 4A1.3(a) (2002) because it "is evidence of the same serious conduct for which the defendant is currently being sentenced." (R., Vol. V at 145-46.)

Next, the district court considered the testimony of the police officers regarding Platt's participation in Carroll's homicide. Concluding the government proved by a preponderance of the evidence that Platt stabbed Carroll and the stabbing resulted in Carroll's death, the district court determined his uncharged conduct formed "the basis for an upward departure pursuant to Section 4A1.3(e)

as . . . 'prior similar adult criminal conduct not resulting in a criminal conviction.'" (*Id*. at 148.) Accordingly, the district court imposed an upward departure from category II to category IV, basing the increase on the number of criminal history points that would have been assigned had the 1985 conviction been counted and had Platt been convicted of Carroll's homicide. Platt was sentenced to forty-eight months imprisonment followed by three years supervised release. The district court also imposed a $1,000.00 fine.

DISCUSSION

I.    Upward Departure

Because Platt's appeal was pending on April 30, 2003, the effective date of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, 117 Stat. 650, we apply the standard of review contained in § 401 of the PROTECT Act. *United States v. Andrews*, 353 F.3d 1154, 1155 (10th Cir. 2003), *cert. denied,* 124 S. Ct. 1696 (2004); *United States v. Nunemacher*, 362 F.3d 682, 684 (10th Cir. 2004). As explained in *United States v. Jones,* 332 F.3d 1294 (10th Cir.), *cert. denied*, 124 S. Ct. 457 (2003):

> In criminal cases other than child crimes and sex offenses, a sentencing court may depart from the applicable guideline range if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.    In    reviewing    a    district    court's    sentencing

-4-

determination, we accept the district court's findings of fact unless clearly erroneous. Further, we generally give due deference to the district court's application of the guidelines to the facts. Where the district court departs from the sentencing guidelines, however, we review de novo the district court's determinations under 18 U.S.C. § 3742(e)(3)(A) and (B).

332 F.3d at 1299 (internal citations and quotation marks omitted).

In *Jones,* we outlined a four-part framework for review. First, we determine whether the district court set forth, in a written order of judgment, its specific reasons for departure. *Id.* at 1299-1300; *see* 18 U.S.C. §§ 3742(e)(3)(A) and 3553(c)(2). Second, we review de novo whether the district court relied on factors advancing the objectives set forth in 18 U.S.C. § 3553(a)(2),[3] and ensure that its reliance did not violate any specific prohibition in the Guidelines. *Jones,* 332 F.3d at 1299-1300; *see* 18 U.S.C. § 3742(e). Third, we consider de novo

---

[3] Section 3553(a)(2) provides, in part:

The court, in determining the particular sentence to be imposed, shall consider--

. . .

(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

whether these factors were authorized under 18 U.S.C. § 3553(b)[4] and justified by the facts of the case—the "heartland" determination. *Jones*, 332 F.3d at 1299-1300; *see* 18 U.S.C. § 3742(e)(3)(B)(ii)-(iii). Whether the factors are "authorized" is determined by application of 18 U.S.C. § 3553(b)(1). Finally, we review for an abuse of discretion whether the sentence "departs to an unreasonable degree from the applicable guidelines range," giving due deference to the district court. 18 U.S.C. § 3742(e)(1)(C).

A.     Written Judgment Requirement

Here, as in many cases where sentencing occurred before the enactment of

---

[4]  Section 3553(b)(1), applicable in cases other than child crimes and sexual offenses, provides:

> Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

the PROTECT Act, the district court's reasoning is not found in the written judgment but in detailed oral rulings explaining the basis for its upward departure. As we have recently recognized, prior to the PROTECT Act, "[t]he district court . . . had no warning of the future requirements when it entered its judgment and set forth its reasons orally at the sentencing hearing." *Nunemacher*, 362 F.3d at 687. We also observed the Sixth and Eighth circuits, the only two courts to have specifically addressed this concern, have wisely held the PROTECT Act's written requirements are met where the sentencing court's specific reasoning is outlined in the material on appeal and the sentencing occurred before the enactment of the PROTECT Act. *Id*. at n.8. We agree. Where the materials provided on appeal are "sufficient to allow review of the decision to depart," a remand directing the district court to reiterate its reasoning in a written judgment would be a waste of judicial resources. *United States v. Camejo,* 333 F.3d 669, 676 n.2 (6th Cir. 2003); *see United States v. Aguilar-Lopez,* 329 F.3d 960, 963 (8th Cir. 2003). In this instance, we find the transcript of the sentencing hearing, which includes the district court's oral ruling and the PSIR, is sufficient to allow review of the decision to depart. However, we caution that the requirements of the PROTECT Act are fully applicable to sentencing judgments following its enactment.

    B.    Reliance On Appropriate Factors

Next, we consider de novo whether the factors identified by the district court advance the objectives set forth in 18 U.S.C. § 3553(a)(2), or violate any specific prohibition in the Guidelines. The district court relied upon Platt's 1985 conviction and his involvement in Carroll's homicide to conclude the original criminal history category did not "adequately reflect the likelihood that the defendant will commit other crimes." The court's reflection on Platt's probable recidivism clearly promotes the statutory objectives of adequate deterrence and protection of the public from further crimes. 18 U.S.C. § 3553(a)(2)(B) and (C).

### 1. Reliable Evidence

An upward departure must be based on "reliable information." USSG § 4A1.3(a)(1) (2003). Platt asserts the evidence supporting his involvement in Carroll's homicide was not sufficiently reliable to form the basis of an upward departure. While he concedes the district court specifically found the police officers' testimony credible, he claims "the record as a whole clearly demonstrates that Mr. Carroll's statements were so contradictory, inconsistent and vague as to be clearly unreliable and thus do not support the factual finding made by the District Court." (Appellant's Br. at 21.)

When reviewing the district court's factual findings, we must "give due regard to the opportunity of the district court to judge the credibility of the witnesses." 18 U.S.C. § 3742(e). "To be clear: although we review de novo

whether a particular departure factor is 'authorized under section 3553(b)' and 'justified by the facts of the case,' we review the district court's underlying findings of fact for clear error." *Jones*, 332 F.3d at 1300 n.9. "Under this standard, we will not reverse a lower court's finding of fact simply because we would have decided the case differently. Rather, [we] . . . ask whether, on the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1248 (10th Cir. 2004).

For the purposes of sentencing, the government need only show Platt's responsibility for the stabbing and murder of Carroll by a preponderance of the evidence. *United States v. Valdez,* 225 F.3d 1137, 1143 n.2 (10th Cir. 2000) (rejecting clear and convincing evidence standard at sentencing even though relevant conduct dramatically increased sentence), *cert. denied*, 532 U.S. 996 (2001). The testimony began with Officer Hill, the first officer at the scene of the stabbing and the first to interview Carroll. She testified Carroll identified his attacker as "Dennis," and he believed Dennis had just gotten out of the penitentiary. Although Carroll provided information about his attacker, Officer Hill testified he was reluctant in doing so. During her interview, Officer Hill received permission to look through Carroll's home. There she found an address book containing a slip of paper with the name "Dennis Platt" and a telephone

number. The next witness, Detective Cook, an investigator who interviewed Carroll at the hospital, testified Carroll told him the full name of his attacker was Dennis Platt.

Next, Detective Parrish, an officer found to be particularly credible by the district court, testified as to his involvement in the investigation. Detective Parrish stated he "ran" the telephone number found in Carroll's address book and discovered that James Platt also used the same number. Two days after the stabbing, Detective Parrish visited Carroll in the hospital and asked him if he knew Dennis Platt by any other name. Carroll responded he knew him as James Platt. Parrish showed him a picture of James Platt and Carroll verified the picture was a photograph of his attacker.

The final witness, Officer Eubanks, received this case as a "cold case." Because Platt was the lead suspect, Officer Eubanks arranged an interview with him. At first, Platt denied knowing Carroll but after the interview continued, Platt admitted he might have known him and he might have been at Carroll's house with other people. Following the testimonial evidence, the government presented documentary evidence demonstrating James Platt used the alias Dennis Platt and he had no relatives named Dennis.

Platt maintains this evidence is insufficient because Carroll gave contradictory statements regarding Platt's physical description, where Platt lived,

what he was wearing the night of the stabbing, and how long he had known Platt. While Carroll's statements conflict on these matters, the government presented evidence allowing a reasonable explanation why Carroll may have been reluctant to clearly identify his attacker. Nonetheless, as the district court judge noted, "[w]e went from Dennis, to Dennis Platt, to Dennis Platt a/k/a James Platt, to James Platt to an ID of James Platt with a photograph . . . . So as a progression, there were no bumps along the road." (R., Vol. V at 137.) Given such evidence, the district court did not err in ruling the government proved by a preponderance of the evidence that Platt stabbed and killed Carroll.

2.     Similar Criminal Conduct

Platt also argues that Carroll's homicide does not provide a legal basis for an upward departure because it is not "prior similar . . . criminal conduct" as required by USSG § 4A1.3(e) (2002). He argues Carroll's homicide, purportedly involving a robbery and stabbing, is not comparable to the conduct involved in the possession of a firearm. We rejected a similar argument In *United States v. Concha*, 294 F.3d 1248, 1254 (10th Cir. 2002), *cert. denied*, 537 U.S. 1145 (2003). There, Concha claimed the sentencing court erred in relying on the charge of attempted murder to support an upward departure on the charge of possession of a weapon "because it neither resulted in a criminal conviction and sentence nor was similar to the instant crime of conviction." *Id.* at 1253 n.4. We

rejected this argument and specifically identified "prior *similar* adult criminal conduct *not resulting in a criminal conviction*" as an appropriate basis for the upward departure. *Id*.; *see also United States v. Cota-Guerrero,* 907 F.2d 87, 89 (9th Cir. 1990) (assault with a deadly weapon and assault and battery may be viewed as similar to possession of a firearm by a felon "[i]nasmuch as they show a propensity toward violence and a willingness to use force"). Because the homicide and possession of a firearm with ammunition both "show a propensity toward violence and a willingness to use force," the district court did not err in treating these crimes as similar for the purposes of USSG § 4A1.3(e) (2002).

C.      Authorization under 18 U.S.C. § 3553(b)

Platt contends the district court erred in basing his departure, at least in part, on his 1985 conviction. He argues his fifteen-year-old possession conviction does not remove his case from the Guidelines heartland. When considering a departure, the Supreme Court has instructed the sentencing court to ask:

> 1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?
> 2) Has the Commission forbidden departures based on those features?
> 3) If not, has the Commission encouraged departures based on those features?
> 4) If not, has the Commission discouraged departures based on those features?

*Koon v. United States*, 518 U.S. 81, 95 (1996) (quoting *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir. 1993)). In reviewing the answers to these questions,

we examine the record as a whole, "recognizing the district court's special competence in determining the unusualness of a case." *United States v. Bartsma*, 198 F.3d 1191, 1196 (10th Cir. 1999).

Contrary to Platt's argument, we need not separate the two prior offenses considered by the district court. The district court was free to evaluate the cumulative effect of two uncounted prior similar offenses. The court applied these facts and found Platt's danger to the community and his potential for recidivism was inadequately reflected in the basic Guideline criminal history category. The Commission has encouraged upward departure in such instances. USSG § 4A1.3. Therefore, "the court is authorized to depart if the applicable Guideline does not already take it into account." *Koon,* 518 U.S. at 96. Platt argues the existence of a prior similar conviction has been taken into account by discounting convictions that are over fifteen years old. Even if true, the presence of *two* uncounted prior similar offenses was not taken into account in the Guideline addressing a felon illegally in possession of a weapon and ammunition. *See* USSG § 2K2.1. The district court correctly determined an upward departure was authorized and justified by the facts of the case.

D.    Departure to an Unreasonable Degree

When reviewing whether the district court abused its discretion in applying an upward departure, we look to "the seriousness of the offense, the need for just

punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, . . . and the need to avoid unwarranted sentencing disparities." *Jones,* 332 F.3d at 1305 (quotation marks and citation omitted). The district court based the degree of the departure on the Guideline parameters for the prior offenses when adding six points to Platt's criminal history category. The points resulted in an increase from a category II to a category IV, in turn increasing the guideline range from 30-37 months to 41-51 months imprisonment.

When the defendant has a history of repeated criminal conduct, a district court should consider the need "that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence." USSG Ch.4, Pt.A, intro. comment. Given Platt's repeated criminal behavior and his potential for recidivism, we conclude the district court's two-level upward departure was not an abuse of discretion.

II.    Imposition of a Fine

Platt argues the district court erred in imposing a fine of $1,000.00 because he did not have a present or future ability to pay. The PSIR revealed Platt had debts of approximately $1,500.00 and had no assets. He spent the years 1988 through 1998 in prison and had failed to find steady employment since his release. In his view, the district court had no basis for finding his ability to pay a fine.

We review the district court's imposition of a fine for an abuse of discretion. A fine is required in all cases "except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." USSG § 5E1.2(a). Factors which the district court shall consider include:

    (1)    the need for the combined sentence to reflect the seriousness of the offense . . ., to promote respect for the law, to provide just punishment and to afford adequate deterrence;

    (2)    any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources.

USSG § 5E1.2(d)(1) and (2). The fact a defendant is indigent at the time of sentencing does not preclude a fine from being imposed. *United States v. Klein*, 93 F.3d 698, 706 (10th Cir.), *cert. denied*, 519 U.S. 1048 (1996). Even if we assume Platt adequately established a present inability to pay a fine, nothing in the record indicates he established a future inability to pay. The fine was to be paid over the three year period of supervised release. He was forty-nine years old, had a high school diploma, and completed an electrician's program while serving a prior prison term. Platt presented no evidence he would be unable to find a job after serving his prison term. The district court did not abuse its discretion.

## CONCLUSION

In sum, we conclude: (1) the district court sufficiently articulated a valid

-15-

reason for its departure from the Guidelines, (2) the factors considered by the district court advanced the statutory objectives and were not prohibited, (3) the factors were authorized and justified by the facts of the case, and (4) the degree of departure was reasonable. In addition, the district court did not abuse its discretion when it imposed a fine. Accordingly, we **AFFIRM**.

**Entered by the Court:**

**TERRENCE L. O'BRIEN**
United States Circuit Judge