**F I L E D**

**UNITED STATES COURT OF APPEALS**

APR 12 2005

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellant, | |
| v. | No. 03-3241 |
| | (D.C. No. 02-CR-10182-01-JTM) |
| STACIE K. CRASS, | (Kansas) |
| Defendant-Appellee. | |

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Circuit Judge, **PORFILIO,** Senior Circuit Judge, and **MURPHY**, Circuit Judge.

Stacie Crass pled guilty to one count of illegal use of a communication device to facilitate the commission of a felony in violation of 21 U.S.C. § 843(b). Based on a total offense level of 29 and criminal history category of II, Ms. Crass' sentencing guidelines range was 97 to 121 months of imprisonment. Because the statutory maximum penalty for a violation of 21 U.S.C. § 843(b) is

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

four years, Ms. Crass' guideline range was capped at forty-eight months pursuant to U.S.S.G. § 5G1.1(a). The district court sentenced Ms. Crass to twenty-one months incarceration, departing downward from the guidelines sentence on two grounds: (1) exceptional post-offense rehabilitation and (2) diminished capacity as a result of her unmedicated bi-polar condition. The government appeals. We reverse in part and remand for resentencing.

After noticing some suspicious activity involving a Jeep and a Pontiac, police officers stopped the Jeep, which was driven by Ms. Crass, for traffic violations. Jonas Crass, her husband, was a passenger in the Jeep. After citing Ms. Crass for traffic infractions, officers asked for consent to search the vehicle. When Ms. Crass refused, the officers summoned a drug dog, which alerted to the outside of the Jeep. Mr. and Ms. Crass were placed in custody and transported to police headquarters. During a police interview, Mr. Crass admitted to selling two pounds of marijuana to Robert Rotramel the evening of the traffic stop. The Pontiac was located later and two pounds of marijuana were found inside.

Ms. Crass confirmed her husband's version of events. She also informed the police there was approximately one-half pound of methamphetamine at her house, left there by her husband's friend, Robert Montoya, who commonly sold methamphetamine. The officers obtained a waiver to search the Crasses' home and discovered 67.04 grams of actual methamphetamine on the premises. Ms.

Crass subsequently pled guilty to one count of illegal use of a communication device to facilitate the commission of a felony. In sentencing her, the district court departed downward to a sentence of twenty-one months incarceration.

Prior to the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), sentencing courts could depart from the applicable guideline range in criminal cases if "the court [found] that there exist[ed] an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b)(1). In a pre-*Booker* review of a sentencing departure, we apply the four steps outlined in *United States v. Jones*, 332 F.3d 1294, 1299-1300 (10th Cir. 2003).[1] First, we ascertain whether the court set forth its specific reasons for departure. 18 U.S.C. § 3742(e)(3)(A); *id.* § 3553(c)(2). Second, we consider, *de novo*, "whether the factors the district court relied upon advance the objectives set forth in section 3553(a)(2)" and ensure that the court's reliance on those factors did not violate any specific prohibition in the guidelines. *Jones*, 332 F.3d at 1299. Third, we determine, *de novo*, whether the factors the district court relied

---

[1]Ms. Crass argued in a FED. R. APP. P. 28(j) letter that we should conduct a reasonableness review pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005), and affirm her sentence. This court does not consider arguments raised for the first time in 28(j) letters. *See United States v. Sanchez-Cruz*, 392 F.3d 1196, 1201 (10th Cir. 2004) (declining to consider *Blakely* argument first raised in a 28(j) letter); *United States v. Lindsey*, 389 F.3d 1334, 1335 n.1 (10th Cir. 2004) (same).

upon are "authorized under section 3553(b)" and "justified by the facts of the case." *Id*. at 1299-1300 (citations omitted). Finally, we review the degree of departure for reasonableness and do not reverse absent an abuse of discretion. *Id*. at 1300.

In its Statement of Reasons, the district court concluded that Ms. Crass' conduct fell sufficiently outside the applicable guideline heartland to warrant downward departures. The court satisfied the requirement of setting forth its reasons for departure with the following specific reasons: (1) Ms. Crass' "exceptional rehabilitative efforts" and (2) her "diminished capacity at the time the offense was committed." Aplt. App., vol. I at 115. The government does not contend the factors relied on by the district court would never be valid grounds for a departure. It asserts instead that the factors are not justified by the record in this case. We agree insofar as the departure was based on exceptional post-offense rehabilitative efforts.

The government points out that "post-offense rehabilitation is accounted for in the context of an acceptance of responsibility adjustment under U.S.S.G. § 3E1.1, comment. (n.1(g)), and thus may not serve as a basis for departure unless it is present to an exceptional degree." *United States v. Benally*, 215 F.3d 1068, 1075 (10th Cir. 2000); *see also United States v. Whitaker*, 152 F.3d 1238, 1240 (10th Cir. 1998) ("post-offense rehabilitation can only be an appropriate ground

for downward departure if the efforts are of a magnitude that the defendant's situation cannot be considered typical of those where an acceptance of responsibility adjustment is granted"). Thus, we must determine whether the record supports the court's conclusion that Ms. Crass' rehabilitation was sufficiently exceptional to warrant a departure from the mandatory guidelines.

In assessing Ms. Crass' post-offense rehabilitation, the district court relied on two reports, one from the Women's Recovery Center of Central Kansas and one from the Wichita Area Sexuality Assault Center. The former, entitled "Footprints Program Progress Report," detailed that Ms. Crass had "been using some type of substance for approximately twenty years, with only brief periods of abstinence." Aplt. App., vol. I at 51. Ms. Crass' counselor noted that she attends weekly group counseling and at least three weekly twelve-step meetings. *Id.* The report stated that Ms. Crass was becoming less self-centered, improving her parenting skills, gaining empathy for her peers, and working on avoiding manipulative patterns. *Id.* at 51-52. The report concluded: "If [Ms. Crass] continues to make recovery a priority and work on her core issues, she has a good chance of succeeding in recovery. Her prognosis is currently Fair to Guarded." *Id.* at 52. The Wichita Area Sexual Assault Center letter added that Ms. Crass "has been attending support group and one-on-one crisis counseling sessions." *Id.* at 53. In support group, she "has participated and provided valuable insight to

members.  In one-on-one crisis counseling sessions, she is making many discoveries about the link between addiction and sexual violence." *Id*.

The district court's decision to depart downward on Ms. Crass' sentence was based on her "complete detoxification and her recovery from continuing drug addiction," *id*. at 100, and, indeed, Ms. Crass' post-offense behavior has been laudable.  The government, however, emphasizes that Ms. Crass' participation in the substance abuse program was ordered as a condition of her pre-trial release. *Id*. at 24.  Moreover, Ms. Crass was instructed to "refrain from any use of alcohol" or other controlled substances.  *Id*.  She was subject to random drug and alcohol testing and screening, and she was told that:

> [a] violation of any of [her] conditions of release may result in the immediate issuance of a warrant for [her] arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

*Id*. at 25.  The Women's Recovery Center of Central Kansas' "Client Guidelines and Behavioral Expectations" required all clients to "be completely drug free during treatment . . . Use of alcohol or other drugs of any kind is prohibited." *Id*. at 11.  A violation of the Women's Recovery Center guidelines would "result in an Administrative Discharge." *Id*.

In sum, Ms. Crass was released on the condition that she participate in an inpatient or outpatient substance abuse therapy and counseling program and be subject to random drug and alcohol screening.  She has certainly complied with

the formal requirements of the program; she has attended her family and group counseling sessions and she has remained drug free and sober. Nonetheless, Ms. Crass's post-arrest behavior reflects little more than her compliance with the conditions of her release and the requirements of the Women's Recovery Center. *See Benally*, 215 F.3d at 1076, 1077 (reversing downward departure where defendant's "post-arrest sobriety reflects little more than his compliance with the conditions of his release to a half-way house"). This was simply not enough under the mandatory guidelines regime which existed pre-*Booker*.[2] The acceptance of responsibility guideline, U.S.S.G. § 3E1.1 cmt. n.1(g), specifically contemplates an adjustment for post-offense rehabilitative effort, and Ms. Crass received that adjustment. Absent "additional evidence or explanation as to why [Ms. Crass'] rehabilitative efforts went beyond that contemplated by U.S.S.G. § 3E1.1," *id.*, we must hold that the district court's three-level downward departure

---

[2]*Compare United States v. Kapitzke*, 130 F.3d 820, 823-24 (8th Cir. 1997) (approving a downward departure for extraordinary post-offense rehabilitation where defendant had voluntarily entered sex offender and chemical dependency treatment before he was aware that federal charges would be filed against him; "attended some type of therapy or support group almost every night"; "received excellent progress reports"; submitted reports that the director of the sex offender treatment plan was "extremely impressed" with his efforts and believed that defendant had "a high probability of success"; submitted reports that his chemical dependency counselor "had never seen a client work harder" than defendant in seven years and that defendant's prognosis was "very good"; and submitted a report from his physician that he had "shown an extraordinary desire to recover from all of his addictions, as well as an 'extraordinary willingness to do whatever necessary to achieve that end'").

for her post-arrest behavior was not justified by the facts of this case.

Because we reverse on the basis of the post-offense rehabilitation departure and must remand for resentencing in any event, we need not decide whether the district court's departure on the basis of diminished capacity was warranted. *See United States v. Cano-Silva*, No. 03-4059, 03-4108, 2005 WL 698983, at *6 (10th Cir. Mar. 28, 2005) (reversing on one ground and remanding for resentencing in light of *Booker* without addressing second ground). Ms. Crass' resentencing proceeding should be conducted pursuant to the Supreme Court's decision in *Booker*. The district court may determine anew whether Ms. Crass was entitled to a downward departure under the guidelines and then "take account of the Guidelines together with other sentencing goals" in imposing her sentence. *Booker*, 125 S. Ct. at 764; *see also Cano-Silva*, 2005 WL 698983, at *6.

We **REVERSE** the decision to depart downward based on extraordinary post-arrest rehabilitation and **REMAND** to the district court with orders to vacate the sentence and resentence Ms. Crass consistent with *Booker*.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge

-8-